[Criminal No. 843. Filed May 24, 1937.]

[68 Pac. (2d) 207.]

BORDERLAND CONSTRUCTION COMPANY, a Corporation, Appellant, v. STATE OF ARIZONA, Respondent.

524

Messrs. Darnell, Pattee & Robertson, for Appellant.

Mr. Joe Conway, Attorney General and Mr. J. B. Sumter, Assistant Attorney General (Mr. Howard Twitty, of Counsel), for Respondent.

ROSS, J.—The Borderland Construction Company appeals from a judgment of conviction of violating the minimum wage law of the state. The charging part of the information reads:

"The said Borderland Construction Co., a corporation, on or about the 20th day of June, 1935, and before the filing of this information, at and in the County of Pima, State of Arizona, did then and there and while being under contract with the Arizona State Highway Department of the State of Arizona for the construction of project Number NRS 110-A, known as the Tucson-Ajo Road Project, in the County of Pima, State of Arizona, wilfully and unlawfully pay to one Frank Robles, a person then and there being a blacksmith's assistant; and doing such work as a blacksmith's assistant and employed by said Borderland Construction Co., a corporation, the sum of Eighty

($80.00) Dollars for working thirty-two (32) days of five (5) hours each, between June 20th, 1935, to and including July 27th, 1935, when and while the minimum wage for such work and labor was, and had been theretofore, fixed by the State Highway Commission of the State of Arizona, according to law, at eighty-seven and one-half (87½) cents per hour for each hour of a five (5) hour working day according to specifications as provided in said contract.''

The questions raised by appellant involve the sufficiency of the facts in the information to state a crime under the minimum wage law and, if that be determined against appellant, the sufficiency of the evidence to sustain the conviction, and some of the court's rulings rejecting evidence offered by it.

The statute under which the information was drawn reads as follows:

''Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions, except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the minimum per diem wages fixed by the state highway commission for manual or mechanical labor performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. Persons doing manual or mechanical labor employed by contractors or subcontractors in the execution of any contract with the state, or with any of its political subdivisions, shall be deemed to be employed by or on behalf of the state, or of such political subdivision thereof.'' Section 1350, Ariz. Supplement 1936 (or section 1350, Rev. Code of 1928, as amended by chapter 12, Laws of 1933).

By its terms this statute is limited to persons doing labor on public works of the state and its political subdivisions. It does not undertake to regulate the hours or wages of labor generally and, if the facts set out in the information fail to show that Robles was working on a public works contract the appellant had with the state, it states no crime.

██ The appellant did not demur to the information, nor did it object to the introduction of evidence on behalf of the state on the ground that the information did not state a crime. Sections 5008 and 5014, Rev. Code 1928. The question of the sufficiency of the information was raised for the first time by a motion in arrest of judgment. This was perfectly proper (section 5099, Id.), for if an information does not allege a public offense advantage may be taken thereof at any time.

Appellant argues that to constitute the crime charged it must appear (1) that the Borderland Construction Company had a public works contract with the state; (2) that Robles was its employee; (3) that he was doing manual or mechanical labor in the execution of such contract with the state; and (4) that appellant paid Robles a rate of wages less than the minimum fixed by the State Highway Commission for the class of work he was doing.

██ It is argued that the third of the enumerated essentials of the offense is not set out in the information; that it is as reasonable to conclude that Robles was working on a private contract appellant had with a third person or concern as that he was working in the execution of a contract appellant had with the state. We think this might be as contended except for the statement in the information that "the minimum wage for such work and labor was, and had been theretofore, fixed by the State Highway Commission of the State of Arizona according to law." This allegation

is a negation of the inference or conclusion that Robles was working on a private contract, because the law does not authorize the highway commission to fix the wages or hours of labor on such contracts. It also ties the work Robles was doing into the contract set out in the forepart of the information by referring 't' specifications as provided in *said contract"* for Robles hours of work and wages. It is of course necessary that an information charging a crime created by statute should be as broad in its facts as the statute, but if the facts set forth fairly apprise the accused of the charge preferred against him so that he can meet it, it should be sufficient especially in view of our constitutional provision against reversal for technical errors in pleadings or proceedings. Section 22, art. 6.

 At the trial it was shown that the highway commission had classified and defined labor for the purposes of fixing wages and that such classification and schedule of wages were attached to and made a part of appellant's contract with the state. We quote:

"The following definitions shall govern with respect to the different classes of labor:

"*Skilled labor;*

"Skilled labor shall include the operators of complex heavy power equipment and skilled craftsmen of the journeyman grade whenever and wherever the nature of the work or the local labor agreements prevailing, require the use of craftsmen of this grade.

"*Labor (intermediate grade);*

"(a) The operators of all power equipment other than complex heavy power equipment, except passenger cars, trucks of 1-½ ton or less manufacturer's rated capacity, and tractors of less than 20 horsepower manufacturer's rated capacity.

"(b) Assistants to skilled craftsmen of the journeyman grade and men doing the work of craftsmen without the full skill, or which does not require the full skill, the term journeyman implies.

"(c) Men performing any other labor which required considerable training and experience.

"*Unskilled labor:*

"Unskilled labor shall include helpers to journeymen and to assistant craftsmen and all other labor which requires no special skill or experience.

"*The classification and Schedule of Minimum Wages for Important Labor Positions is as follows:*
. . . *Classification Title: Hourly Rate*
*Intermediate Grade:*

Blacksmith's Assistant .87½

. . . . . . . . . . . ."

The rate per hour for unskilled labor was fixed at 50 cents. It is the contention of the prosecution that Robles' work placed him in the "Intermediate Grade" with a wage of 87½ cents per hour, and defendant contends that it placed him in the unskilled class with a wage of 50 cents per hour. He was doing work in appellant's blacksmith shop, aiding a blacksmith who was a highly skilled craftsman of the journeyman grade. The prosecution insists that the work he was doing made him an "assistant" to the blacksmith and placed him in the "Intermediate Grade." Appellant is just as insistent that Robles was a "helper" to the blacksmith with very little knowledge of the work and doing only what he was told to do, in the manner he was told to do it. We have read the evidence adduced by the parties on this issue and find it conflicting. The appellant at the close of the state's case and at the close of the whole case moved for an instructed verdict upon the ground "that the state has utterly failed to prove any violation of the specifications of the contract or of any law of the State of Arizona," and the learned judge refused to grant the motion, stating that "it will be the duty of the jury to determine from the facts in this case which classification this particular work falls under." We think the court was right in submitting the controverted

question to the jury. No criticism whatever is made of the court's instructions.

The jury in finding appellant guilty necessarily found that Robles' work placed him in classification (b), *supra,* that is, that he was performing work as an assistant to a skilled craftsman, etc. This determination was approved by the trial court by its order overruling the motion for a new trial, based in part upon the sufficiency of the evidence to support the conviction. We therefore accept the verdict of the jury as finally settling that point against the appellant.

■ The appellant, although the statute defining the offense with which it is charged does not require that the act be knowingly or willfully done, insists that the act constituting the crime must be accompanied with a criminal intent. In *Troutner* v. *State,* 17 Ariz. 506, 508, 154 Pac. 1048, L. R. A. 1916D 262, we said:

"That the Legislature may make the doing of an act or the neglect to do something a crime in the absence of criminal intent is well settled. The intent of the Legislature therefore, in any given piece of legislation, is the controlling factor. It is said in 8 R. C. L. 62:

" ' . . . The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute.' "

■ ■ Mr. Justice HOLMES, in *Ellis* v. *United States,* 206 U. S. 246, 27 Sup. Ct. 600, 602, 51 L. Ed. 1047, 11 Ann. Cas. 589, has well and concisely given the rule as follows:

"If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct

is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent.''

Appellant, however, contends we have construed section 1350, *supra,* in *State* v. *Anklam,* 43 Ariz. 362, 31 Pac. (2d) 888, 890, as requiring a criminal intent. It quotes from our opinion in that case the following language:

''It is true that the mere doing of an act forbidden by statute in some kinds of cases makes out the crime, but, where the criminality of the act is made to depend upon a rule or order of the state highway commission or other agency, the person charged with its violation should be permitted to show that he did not knowingly do so.''

To get the meaning of this language, what the court said just preceding it should be considered. It is clear the lack of knowledge referred to as a defense under the statute is where the highway commission has made a classification and a schedule of wages, or changed such classification or schedule and the defendant, although exercising care, did not know of such rule or change. We are satisfied that the doing of the thing forbidden by section 1350, *supra,* constituted the crime.

Other rulings assigned as error were rejections of the offered testimony by the appellant of an employee of the highway commission giving his and the commission's construction of classifications (b), (c), and ''Unskilled Labor.'' This evidence, as we understand it, was offered for the purpose of showing lack of intent to violate the law. The court was right in rejecting this evidence for the reason that the intent was immaterial and for the further reason that the testimony if given would have shown a construction of said classifications made after the commission of the act and not before.

We have come to the conclusion that the appellant had a fair and impartial trial and that the judgment of conviction should be affirmed, and it is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.