484 P.2d 619

The STATE of Arizona, Petitioner,

v.

ARIZONA MINES SUPPLY CO., and the Honorable Kenneth C. Chatwin, Judge of the Superior Court of the State of Arizona, County of Maricopa, Respondents.

No. 10298.

Supreme Court of Arizona, In Banc.

April 23, 1971.

**200**

Moise Berger, Maricopa County Atty., by Albert I. Firestein, Thomas W. Meissner, H. Charles Eckerman, Deputy County Attys., Phoenix, for petitioner.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph Hunsaker, Phoenix, for respondents.

UDALL, Justice:

This is a special action, filed by the State of Arizona ex rel Moise Berger, Maricopa County Attorney, on December 10, 1970, seeking relief from a ruling by a Superior Court judge requiring that the State prove criminal intent as a pre-requisite to a conviction for violation of this state's Air Pollution Act, A.R.S. §§ 36–771 to 36–790. On December 15, 1970, we accepted jurisdiction of the state's petition for special action allowing time for both parties to submit additional briefs.

The facts out of which this controversy arose are as follows: On September 23, 1970, an information was filed by the County Attorney's office in the Superior Court of Maricopa County, charging defendant-respondent, Arizona Mines Supply Co., with two counts of "air pollution", a misdemeanor. The information charged specifically that the defendant-respondent: on or about June 19, 1970 (Count I), and June 29, 1970 (Count II),

"did cause, suffer, allow or permit the discharge into the atmosphere from a single source of emission, air contaminants for a period or periods aggregating more than three minutes in one hour as dark as or darker in shade than that designated as No. 2 on the Ringelmann Chart as published by the U. S. Bureau of Mines, or of an opacity equal to or greater than air contaminants designated as No. 2 on the Ringelmann Chart, all in violation of Sec. IV Regulation 1, Maricopa County Air Pollution Control Regulations, Feb. 9, 1970 and A.R.S. Sec. 36–779 and 36–789.01, May 18, 1970."

This case was set for trial on December 10, 1970. Prior to selection of the jury, the State filed a "Motion in Limine", in which it sought to exclude certain anticipated evidence, requesting that the court exclude: (1) any evidence as to the amount of money expended by Arizona Mines Supply Co. for air pollution equipment; and (2) any testimony which defendant might seek to introduce with regard to its lack of criminal intent to violate the statute and regulations. The court ruled in favor of the defendant on both points, ordering that the motion in limine be denied. From the denial the State filed this petition for special

action. In response thereto, defendant-respondent has advanced eight arguments which we shall consider in the order submitted.

(I) "The Maricopa County Air Pollution Control Regulations are Invalid as Being Passed Prior to the Effective Date of Senate Bill No. 1."

We find this argument to be totally without merit since the legislature expressly provided that rules, regulations and standards adopted by a board of supervisors or the state board of health prior to the effective date of Article 8, consisting of sections 36–771 to 36–790, need not be readopted. See footnote to § 36–770, A.R.S.

(II) "The Information does not Charge the Defendant With the Commission of an Offense."

Respondent was charged by information, as quoted above, with violating Section IV, Regulation 1, Maricopa County Air Pollution Control Regulations and §§ 36–779 and 36–789.01 A.R.S. While it is true that of these three sections the only section actually violated was Section IV, Regulation 1, supra, the other two sections, A.R.S. §§ 36–779 and 36–789.01, were cited in the information for Arizona Mines' benefit, in order that the corporation might be better informed as to the possible penalty and the authority under which the Maricopa County Air Pollution Control Regulations were formulated. Respondent was adequately and appropriately charged.

(III) "The Information Filed Fails to Sufficiently Inform the Defendant of What Offense is Intended to be Charged for the Reason that it does not Sufficiently Define: (1) The Offense; and (2) the Time and Place of its Occurrence."

Though we have already ruled that defendant was appropriately charged we feel it worthwhile to answer the above-stated argument. Rule 118, Rules of Criminal Procedure, 17 A.R.S., specifically provides that an information need not contain an allegation of the time of the commission of the offense other than "on or about such time", unless such allegation is necessary to charge the offense under Rule 115, Rules of Criminal Procedure, A.R.S. In State v. Maxwell, 103 Ariz. 478, 445 P.2d 837 (1968), we held that an information is sufficient and Rule 115 satisfied where the information fairly indicates the crime charged, states the essential elements of the alleged offense and is sufficiently definite to apprise the defendant of the crime charged so as to allow him to prepare his defense. Here, defendant-respondent was sufficiently informed of the crime with which it was charged. The exact hour in which the offense was committed need not be alleged since time is not an essential element of the offense of polluting the air. An identical issue was raised and similarly disposed of in People v. Plywood Mfg's of California, 137 Cal.App.2d Supp. 859, 291 P.2d 587 (1955), appeal dismissed, Union Oil Co. v. People of the State of California, 351 U.S. 929, 76 S.Ct. 787, 100 L.Ed. 1458, rehearing denied 351 U.S. 990, 76 S. Ct. 1046, 100 L.Ed. 1503.

"[18, 19] The defendant criticises the complaint because the hour is not specified during which, according to the charge, illegal smoke was emitted for more than three minutes. This was not a legal defect. Section 955, Penal Code, declares: 'The precise time at which the offense was committed need not be stated * * * except where the time is a material ingredient in the offense.' A complaint that charges that the defendant violated an ordinance forbidding rubbish fires before 7 a. m., or after 11 a. m., in any calendar day would, of necessity, have to allege that the defendant had a fire either before 7 a. m. or after 11 a. m., for in such a case the time is an ingredient of the offense. Not so here, except, of course, that the illegal smoke must exist for three minutes in an hour. 'What hour?' is quite immaterial; it need not be specified. Obviously, it would be fairer to the defendant to al-

lege the specific date and hour that the People expect to prove, based upon the information at hand before the complaint was filed. The law does not require, however, that the precise time be given. See People v. Fremont, 1941, 47 Cal. App.2d 341, 117 P.2d 891, 893.; People v. Sanchez, 1939, 35 Cal.App.2d 231, 95 P. 169, 173. Moreover, if in charging a violation of section 24242 the time is such an ingredient of the offense that the precise hour should be alleged, failure to do so will not warrant a reversal where —as in this case—no prejudice to the defendant appears from the deficiency in the pleading." 291 P.2d at 594–595.

■ The argument that the information failed to sufficiently define the place of occurrence fails for basically the same reasons mentioned above. The law does not require that the precise place the offense was committed be given. See Rule 118, Rules of Criminal Procedure, A.R.S., wherein it is stated that an information need not contain an allegation of the place of commission of the offense, "unless such allegation is necessary to charge the offense under Rule 115." Here the information sufficiently alleged that the offense occurred in Maricopa County. An information is sufficient if the offense is set forth in such manner that a person of common understanding would know what was intended. State v. Suarez, 106 Ariz. 62, 470 P.2d 675 (1970). State v. Terrell, 103 Ariz. 453, 445 P.2d 429 (1968). It should be remembered that in the event such additional information should prove to be essential for defendant to prepare a defense, his remedy would be by way of a request for a bill of particulars pursuant to Rule 116, Rules of Criminal Procedure, 17 A.R.S. See also State v. Lombardo, 104 Ariz. 598, 457 P.2d 275 (1969); State v. Terrell, supra. In any event, respondent has shown no resulting prejudice. We find no error here.

(IV) "That the Law is Void for Vagueness and Violative of the Fourteenth Amendment of the United States Constitution" Since "No Guidelines are Set Down Which Set Forth a Reasonable Standard of Guilt. The So Called Ringelmann Chart * * * is a Subjective Scheme for Reading Smoke Density * * *"

■ We find this argument totally unacceptable. In almost every jurisdiction in which the use of the Ringelmann Chart has been contested, its use as a standard for prosecution has been upheld. Northwestern Laundry v. City of Des Moines, 239 U.S. 486, 36 S.Ct. 206, 60 L.Ed. 396 (1916); People v. Plywood Mfg's of California, supra; People v. International Steel Corp., 102 Cal.App.2d Supp. 935, 226 P.2d 587 (1951); Sittner v. Seattle, 62 Wash.2d 834, 384 P.2d 859 (1963); Board of Health v. New York Central Railroad Co., 10 N.J. 294, 90 A.2d 729 (1952); Penn-Dixie Cement Corporation v. City of Kingsport, 189 Tenn. 450, 225 S.W.2d 270 (1949); City of Miami v. City of Coral Gables, 233 So.2d 7 (Fla.App., 1970).

In People v. International Steel Corp., supra, the use of the Ringelmann Chart was explained and upheld in the face of an attack on the California Air Pollution Act as having set forth no ascertainable standard of guilt by reason of its reference to the Ringelmann Chart. To this argument the court responded:

"While, as already stated, the courts take notice of the Ringelmann Chart, our notice in this case is fortified by a copy which was introduced in evidence and is in the record. It is a plain white piece of paper divided into four sections, numbered from 1 to 4 and each about $5\frac{3}{4} \times 8\frac{3}{4}$ inches in size. On each of these sections is printed a series of intersecting heavy black lines of uniform width for each section, with the lines growing progressively wider from section 1 to section 4, until on section 4 the black covers much more than half of the surface. This chart refers to Bureau of Mines Information Circular No. 6888, a copy of which is also in the record.

From the chart and this circular, it appears that the chart is to be posted at a distance of 50 feet from the observer. When so posted the black lines and the white spaces merge into each other, by a process of optical illusion, so as to present the appearance of a series of gray rectangles of different color densities, No. 4 being the densest. Estimates of the density of smoke may be made by glancing from this chart so displayed to smoke, and picking out the section on the chart which most nearly resembles the smoke. This mode of measuring the density of smoke has been in use, it appears, for over fifty years. This affords a reasonably certain mode of determining and stating the density and opacity of smoke, and we think that the statute adopting it is not lacking in certainty." 226 P.2d 587 at 590-591.

For the foregoing reasons we find the Ringelmann Chart sets forth a reasonable standard for detection of air pollution and is not void for vagueness.

    (V) "That the Information is Wrongfully and Prematurely Filed in That no Notice was Given to the Defendant nor were the Procedural Steps Set Forth in Section IX of Maricopa County Air Pollution Control Regulations Complied With."

■ In support of this argument respondent refers us to St. Regis Paper Co. v. State of Florida, 237 So.2d 797 (1970), wherein the Florida court held that the Air Pollution Control Commission had acted prematurely in instituting an independent judicial action seeking civil and criminal penalties prior to having complied with the mandatory administrative procedures of § 403.121, Florida Statutes, 1967, F.S.A. This statute required that notice be given the alleged violator and that an administrative hearing and corrective action follow, if necessary, before any independent judicial action was commenced. Such required administrative procedure was not followed. We find this case to be inapposite to the

case at bar, since § 36-781, A.R.S., does not provide for an administrative hearing as a prerequisite to instituting suit as did the Florida Air & Water Pollution Control Act. § 36-781, A.R.S., as amended, reads as follows:

"§ 36-781. *Violations; order of abatement; time for compliance.*

When the control officer has reasonable cause to believe that any person is violating any provision of this article or any rule or regulation adopted pursuant to this article or any requirement of an operating or conditional permit issued pursuant to this article he may forthwith serve upon such person by registered or certified mail or in person an order of abatement or may file a complaint alleging violation pursuant to § 36-789.01, or both. * * *"

Clearly, under § 36-781, supra, petitioner was authorized to take either of three approaches. Petitioner might have served defendant-respondent with an order of abatement; petitioner might have "filed a complaint alleging violation pursuant to § 36-789.01"; or petitioner might have done both. Here, petitioner properly chose to institute suit. The fact that the legislature saw fit to grant petitioner the choice of utilizing his discretion as to which procedure to follow does not thereby render this Act invalid. Having found no abuse of that discretion, we hold that the action was not wrongfully or prematurely filed.

■ With respect to the case at bar it is common knowledge that air pollution today poses a serious threat to the health of this nation and, as such, clearly falls within the scope of the state's regulatory powers. That air pollution bears a substantial relation to public health is beyond dispute and has on a number of occasions been the subject of judicial notice:

"Dense smoke, a carrier as it is of dust, soot and cinders, contaminates and pollutes the atmosphere and deteriorates its normal healthful attributes and qualities, and therefore cannot but be harmful to the public health, especially in popu-

lous areas. This is a matter of common experience, so much so that it is properly a subject of judicial notice." Board of Health of Weehawken Tp., Hudson County v. New York Central Railroad Co., 4 N.J. 293, 72 A.2d 511 at 514 (1951).

As early as 1916, the United States Supreme Court, realizing the imminent adverse effects of industry's uncontrolled pollution of the air, held that so far as the Federal Constitution was concerned a state might, by itself or through authorized instrumentalities, declare the emission of dense smoke in cities or populous neighborhoods to be a nuisance and, therefore, subject to restraint; further holding that the harshness of such legislation or its effects on business interests, short of mere arbitrary enactment, would not be a valid constitutional objection. Northwestern Laundry v. City of Des Moines, 239 U.S. 486, 36 S.Ct. 206, 60 L.Ed. 396 (1916).

Under a state's police power the legislature is vested with the power and duty to enact all manner of wholesome and reasonable laws, either with or without penalties as the legislature shall determine to be in the best interests of the state and its inhabitants. Promotion and improvement of public health is a fundamental obligation of national, state and local governments. Hitchcock v. Collenberg, 140 F.Supp. 894 (1956). And it is within the legislature's sole discretion to determine when and in what manner a business or occupation shall be subjected to reasonable restrictions:

"* * * [t]he question as to when a business or occupation, whether inherently or as a result of the manner in which it is conducted, is subject to regulation by the legislature, is one primarily for that body to determine. The courts are not interested in the question as to the wisdom of such regulation, but only whether the regulation runs contrary to constitutional guaranties, and whether it is arbitrary and unreasonable. There is business which is entirely legitimate ordinarily, but it may become, because of dinarily, but it may become, because of

the manner in which it is carried on, a cause of such evils, vices and dangers as affect the safety, health, comfort or welfare of the public. When it has this effect, it is subject to regulation, or even to prohibition, by the state under its police powers, and in determining when the necessity for such regulation or prohibition arises, it will be presumed that the legislature knows the manner in which the business is carried on and believes that the necessity for regulation has arisen. Martin v. Railroad Comm. of Texas, Tex.Civ.App., 93 S.W.2d 1155." Francis v. Allen, 54 Ariz. 377 at 381–382, 96 P.2d 277 at 279 (1939).

(VI) "That the Information does not charge an Offense for the Reasons that the Procedure Employed in Setting Out and Adopting the Applicable Rules and Regulations are Unconstutitional as being an Improper Delegation of Legislative Power Under Article III of Our Constitution."

Article III of our Constitution, A.R.S. provides for the separation of government into three separate and distinct departments:

"The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

The fundamental principle involved in Article III is that governmental powers are to be divided among the three departments of government; each to maintain its sovereignty within its own sphere. Yet, "* * * [i]t is commonly said that it does not invariably follow that an entire and complete separation of power of the three branches of government is desirable or was ever intended. Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, 38 A.L.R. 131; Parker v. Ri-

ley, 18 Cal.2d 83, 113 P.2d 873, 134 A.L.R. 1405; People ex rel. Rusch v. White, 334 Ill. 465, 166 N.E. 100, 64 A.L.R. 1006. For example, the functions of public utility boards and workmen's compensation commissions are a blending of the recognized spheres of all three departments of government. The right is generally conceded to delegate to an administrative agency the power to adopt rules and regulations necessary to carry a law into effect. State v. Marana Plantations, 75 Ariz. 111, 114, 252 P.2d 87. In some cases such as zoning and the licensing of professions, the discretion vested is so broad and the limitation so general that there is little essential difference between such generalities and no standard at all. See, 92 A.L.R. 410, 54 A.L.R. 1110, 12 A.L.R. 1447. We note also a distinct modern tendency to be more liberal in the granting of discretion in the administration of laws in fields where the complexities of economic and governmental conditions have increased, particularly where it is impractical to lay down a comprehensive rule. Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S.W.2d 691, 87 A.L.R. 534." Southwest Engineering Co. v. Ernst, 79 Ariz. 403 at 414–415, 291 P.2d 764 at 772 (1955).

Under the doctrine of "separation of powers" the legislature alone possesses the lawmaking power and, while it cannot completely delegate this power to any other body, it may allow another body to fill in the details of legislation already enacted. Since the power to make a law includes discretion as to what it shall be, this particular power cannot be delegated. But the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative the authority conferred upon commissions and boards to formulate rules and regulations and to determine the state of facts upon which the law intends to make its action depend.

" ' * * * We see, then, that while the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself. *Without this power legislation would become oppressive, and yet imbecile.* Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished, or the thing permitted may be specified, and the rest left to the agency of others, with better opportunities of accomplishing the object, or doing the thing understandingly.' " [Emphasis added.] Peters v. Frye, 71 Ariz. 30 at 35, 223 P.2d 176 at 179 (1950).

Delegation of "quasi-legislative" powers to administrative agencies, authorizing them to make rules and regulations, within proper standards fixed by the legislature, are normally sustained as valid, and, barring a total abdication of their legislative powers, there is no real constitutional prohibition against the delegation of a large measure of authority to an administrative agency for the administration of a statute enacted pursuant to a state's police power. And the standards which must accompany such grant of legislative power need not necessarily be set forth in express terms if they might reasonably be inferred from the statutory scheme as a whole.

"When dealing with the question of standards, a court is not confined to the specific terms of the particular section in question, but must examine the entire act in the light of its surroundings and objectives. Standards may reasonably be implied from a consideration of the statutory scheme as a whole. [Citations omitted]"

"A statute need establish no more than a sufficient basic standard, i. e., a definite policy and rule of action which will serve as a guide for the administrative agency, in order for the delegation of

legislative power to be deemed valid." Department of Health v. Owens-Corning Fiberglas Corp., 100 N.J.Super. 366, 242 A.2d 21 at 29–30 (1968).

In State v. Wacker, 86 Ariz. 247, 344 P. 2d 1004 (1959), we upheld § 3–103, Title 3, Chapter 1 of the Agricultural Administrative Act, A.R.S., which authorized the Commission of Agriculture and Horticulture to promulgate rules and regulations designed to suppress and eradicate an insect pest, known as the "pink bollworm of cotton." In distinguishing the Wacker case, supra, from State v. Marana Plantations, Inc., 75 Ariz. 111, 252 P.2d 87 (1953), we upheld the following minimal standard:

"A further question concerns the sufficiency of the standard to legally circumscribe the regulation-making power of the Commission. We said in Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915, that the extent and character of the rules and regulations authorized to be adopted by the legislature must be fixed in accordance with common sense and the inherent necessities of governmental coordination. We also said in the Ernst case, supra, 291 P.2d at page 775, that it is not necessary for the legislature to lay down in advance an exact mathematical formula to which the administrative agency must adhere, for circumstances may vary which would serve to defeat the purpose of the legislative enactment.

"In the Marana case, the legislative enactment required only that the rules and regulations of the State Board of Health be promotive of public health. Here, by contrast, subsection 2, A.R.S. § 3–103, supra, requires that the rules and regulations must be such as are *necessary* to prevent the introduction of a crop pest or disease in the state and to prevent propagation or dissemination from one locality to another. *The governing standard established by the legislature is that of necessity.* We recognize that the *word 'necessity' is not subject to precise definition* and is not one which is susceptible to exact mathematical formula in advance. But here the circumstances for the control, suppression and eradication of crop pests and diseases quite obviously vary from disease to disease, and pest to pest, even from locality to locality, so that it is plainly impossible for the legislature to designate a precise rule of conduct in advance of administrative determination." [Emphasis added] 86 Ariz. 247 at 250–251, 344 P.2d 1004 at 1007.

Here we have two separate, distinct and adequate standards. The first is that the rules and regulations shall be such as are determined to be "necessary and feasible." In *Wacker,* supra, we upheld an act whose only standard was that the rules and regulations were to be such as were "necessary." The rules and regulations in the case at bar must, in addition to being necessary, be "feasible." In addition, the rules and regulations to be promulgated by the county board of supervisors, were to contain pollution standards "at least equal to or more restrictive than those adopted by the board of health." We find no difficulty in upholding the legislative delegation of authority since adequate standards were set up.

(VII) "That Permits Numbered '1AS', '2AS' and '3AS', have been Issued to this Defendant, who Owns the Machinery Which Allegedly Caused the Pollution."

The fact that Arizona Mines had applied for and been granted a permit does not mean the corporation has been granted a license to pollute. Section 1, Regulation 2(c), Maricopa County Air Pollution Control Regulations, states in part that on or after the date these regulations are adopted a written permit from the Air Pollution Control Officer will be required for the continued use or operation of all existing machines, equipment, or other devices which may cause or contribute to air pollution or are used to prevent or control the emission of air contaminants. The permits

which Arizona Mines was issued merely certified that Arizona Mines had complied with the minimal requirements of the Maricopa County Health Code and the laws of the State of Arizona pertaining to the operation of such pollution control equipment; and that if Arizona Mines properly operated and maintained such equipment it should be sufficient to enable them to comply with the Maricopa County Air Pollution Control Regulations. Issuance of the permits does not constitute actual or implied permission to emit excessive contaminants; nor does it relieve a party from compliance with the Air Pollution Control Regulations or any other law or ordinance.

(VIII) "That the State Must Prove Knowledge or Intent as a Prerequisite to Conviction."

Section IV, Regulation 1, Maricopa County Air Pollution Control Regulations, provides that:

"No person shall cause, suffer, allow or permit the discharge into the atmosphere from any single source of emission whatsoever any air contaminants for a period or periods aggregating more than three minutes in any one hour which is:

a. As dark as or darker in shade than that designated as No. 2 on the Ringelmann Chart as published by the U. S. Bureau of Mines, or

b. Of an opacity equal to or greater than an air contaminant designated as No. 2 on the Ringelmann Chart."

Nowhere does this regulation (or the Air Pollution Act, for that matter) provide, either expressly or impliedly, that before the state may convict someone of "air pollution" it must first prove that the air contaminant was discharged knowingly or intentionally. Defendant argues that some degree of knowledge or intent is pre-requisite to conviction. The State, on the other hand, contends that it need not prove intent or knowledge since this offense is more in the nature of "malum prohibitum".

After having carefully considered the apparent intent of the legislature, argu-ments advanced by opposing counsel, the circumstances surrounding this case and the consequences of unabated air pollution to public health; we find that the state need not prove intent or knowledge on the part of the accused as a pre-requisite to conviction. That the legislature may make the doing of an act or the neglect to do something a crime without requiring criminal intent is well-settled. Troutner v. State, 17 Ariz. 506, 154 P. 1048 (1916); Borderland Construction Co. v. State of Arizona, 49 Ariz. 523, 68 P.2d 207 (1937); Fitzpatrick v. Board of Medical examiners, 96 Ariz. 309, 394 P.2d 423 (1964). The intent of the legislature therefore, is the controlling factor.

" 'Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, *in view of its manifest purpose and design*. There are many instances in recent times where the legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. *The doing of the inhibited act constitutes the crime*, and the moral turpitude or *purity of the motive* by which it was prompted, *and knowledge or ignorance* of its criminal character *are immaterial circumstances* on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act.' " [Emphasis added.] 17 Ariz. 506 at 508, 154 P. 1048 at 1049.

With regard to the introduction by a defendant of evidence of expenditures made in installing pollution control equipment and precautions taken to avoid pollution, such will not constitute a defense to prosecution and conviction, and are, therefore, inadmissible at trial. Evidence of "extenuating circumstances" may, however, be presented to the court *after verdict* in mitigation of the penalty to be imposed.

"In a criminal trial, the issue is to determine the guilt or innocence of the defendant in the commission of a specific

crime. While ordinarily a criminal intent must exist in order to support the conviction of a crime, it is also true that the Legislature may enact a law making certain conduct a crime in the absence of a criminal intent. Borderland Con. Co. v. State, 49 Ariz. 523, 68 P.2d 207 (1937). Such a law is designated malum prohibitum and the mere doing of the act prohibited constitutes the crime. Section 32–1456 is such a law. *Although extenuating circumstances would be no legal bar to conviction, they would certainly be important factors in determining a penalty, and might even warrant granting of probation.*" [Emphasis added] Fitzpatrick v. Board of Examiners, 96 Ariz. 309 at 315, 394 P.2d 423 at 427.

The basic premise of the concept of "strict liability" or "malum prohibitum" offenses is that the mere doing of the act constitutes the offense and the fact that the act was done without intent or in "happy ignorance" will not exonerate the party, nor does this make the prohibited act any less harmful to society.

In conclusion, legislation in aid of the state's police power carries with it a presumption of validity which must be overcome by him who attacks its validity. American Federation of Labor v. American S. & D. Co., 67 Ariz. 20, 189 P.2d 912 (1948). Here, defendant has failed to carry his burden. We find this act to be a proper enactment under this state's police power.

In accordance with the foregoing, we hold that the state need not prove criminal intent as a pre-requisite to conviction. It is therefore ordered that the petitioner's "Motion in Limine" be granted without prejudice to defendant-respondent's right to introduce evidence *after verdict* of extenuating circumstances, in mitigation of the penalty to be imposed.

. STRUCKMEYER, C. J., JACK D. H. HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ.; concur.