COLE, Judge.
The question presented on appeal is whether or not the evidence is sufficient to establish air contaminants discharged from an open burning on a solid waste disposal site reached undesirable levels.
BACKGROUND
The Pete Caldwell Drilling Company, Inc., defendant, operated a solid waste disposal in West Monroe, Louisiana pursuant to a valid permit. The activities on the site were to be conducted in accordance with an “interim operational plan” drafted by Walter (Pete) Caldwell tracking a Compliance Order issued September 24, 1981, by the Solid Waste Management Division of the Office of Environmental Affairs, Department of Natural Resources.
On August 2, 1983, a Compliance Order, based upon specific findings of fact, mandated the defendant,
“I.
To take all necessary steps to immediately extinguish any and all open burning of solid waste.
II.
To immediately take all necessary precautions to prevent open burning of solid waste in violation of the Regulations and the Act.
III.
To provide the Assistant Secretary, within 14 days of receipt of this ORDER, a detailed written report of steps taken in response to this ORDER.
IV.
To be hereby notified that failure or refusal to comply with this Compliance Order, and the provisions herein, will subject the Respondent to possible enforcement procedures under Section 1073 E of the Act which could result in the assessment of civil penalties in an amount not to exceed $50,000 for each day of continued noncompliance.”
On October 26, 1983, a meeting was held between the defendant and the assistant secretary of the Office of Environmental Affairs. As a result of this meeting an “assessment of penalty” was issued November 18, 1983, concluding defendant had failed to take the necessary action to extinguish the open burning on the landfill and allowed the fire to continue for an extended period in violation of section 11.2 of the Air Quality Regulations and La.R.S. 30:1087. The office assessed a penalty of $2,000. In *803 response, the defendant requested a de novo hearing which was held February 6, 1984, before Administrative Law Judge J. David McNeill, III. Judge McNeill filed findings and recommendations on March 5, 1984.[1]
*804 The defendant filed a motion for review of these findings and recommendations. As a result a public hearing was scheduled in Baton Rouge for May 24, 1984. Thereafter, on July 18, 1984, Secretary Patricia L. Norton ordered the following assessment of penalty:
“FINDINGS OF FACT AND CONCLUSIONS OF LAW
I.
An adjudicatory hearing was held on this matter after proper notice on February 6, 1984, by J. David McNeill, III, administrative law judge, who thereafter submitted a report entitled ‘Findings and Recommendations’ dated March 5, 1984.
II.
The Findings of Fact and Conclusions of Law in the report submitted in this matter by Mr. McNeill on March 5, 1984, are hereby incorporated herein and made a part hereof with the exception Findings of Fact Numbers 13 and 16.
III.
On Tuesday, August 2, 1983, Mr. Walter M. (Pete) Caldwell, III ordered the return of the earth moving equipment from the oilfield location to the disposal site at such time as the oilfield job had been completed. It arrived on site Wednesday afternoon, August 3, 1983.
IV.
In the absence of Mr. Walter M. (Pete) Caldwell, III, his brother, Don Caldwell had the authority to order earth moving equipment back from the oilfield job.
V.
An on-site investigation by employees of the Office of Environmental Affairs on or about July 29, through August 3, 1983, disclosed that despite previous warnings Respondent failed to take necessary action to extinguish an open burning at its landfill and allowed the fire to continue for an extended period, in violation of Section 11.2 of the Air Quality Regulations and Section 1087 of the Act.
VI.
Respondent has had a history of open burnings since 1981 and has failed to take all reasonable measures to prevent or halt such violations.
VII.
Although there was no direct risk to health or property, the fires and smoke were of sufficient gravity that various neighborhood residents complained to the Office.
VIII.
Respondent failed to report the violations and refused to take necessary steps to expeditiously extinguish the fire described in Paragraph V above.
IX.
A civil penalty under Section 1073 E of the Act may be assessed for the violations described hereinabove.
X.
After hearing, and upon reading the entire record in the matter and giving due consideration to all information and evidence presented concerning the factors required by law, and the report of the administrative law judge, a fine of $1,000 for each of six days of violations from July 29, 1983, through August 3, 1983, or $6,000 total is appropriate.
*805 ORDER
Based on the foregoing FINDINGS OF FACT, and the recommendations of the administrative law judge, Respondent is hereby ORDERED:
I.
To make payment in full of a civil penalty, which is hereby assessed as $6,000, to the Secretary, Department of Environmental Quality, no later than fifteen (15) days after this assessment becomes final.
II.
To be on notice that this assessment shall become final and shall not be subject to further review unless no later than thirty (30) days after receipt of this decision the Respondent files with the Secretary a motion for appeal to the Court of Appeal, First Circuit.
III.
To be on notice that upon the penalty assessed herein becoming final and the penalty, or any portion thereof, remaining unpaid, this matter shall be referred to the Attorney General for collection of the penalty plus all costs associated with that collection.”
ASSIGNMENTS OF ERROR
The defendant appeals from this decision in accordance with Rule 2 of the Louisiana Court of Appeal, First Circuit. The Department of Environmental Quality argues the defendant’s appeal should be dismissed becausé in brief defendant assigns as error legal issues which were not designated as assignments of error in his application for appeal, as required by Rule 2 § l.[2] While such an argument may be valid as to assignment of error number two contained in defendant’s brief, pertaining to the constitutionality of the legislative enactments and regulations, it is certainly ineffective as to the defendant’s assignments of error numbers 1 and 3 contained in defendant’s brief. Assignment of error number one states:
“The Department of Enviromental (sic) Quality erred by not dismissing the charges against Appellant for the reason that the Department failed to prove that the open burning at Appellants disposal was of an undesirable level creating air contaminants in violation of Louisiana Revised Statutes, 30:1083.” (Underscoring theirs.)
Assignment of error number three states:
“The decision of the Department of Enviromental (sic) Quality is contrary to the law and the evidence.”
These assignments in brief are derivatives of assignment of error number 2 contained within defendant’s application for appeal which states:
“The findings and recommendations of the Administrative Law Judge are in part factually incorrect and his recommenda *806 tions are contrary to the spirit and intent of the legislature in the creation of the Department of Environmental Quality as applied to the facts of this case.”
In conjunction with this assignment of error the defendant designated “the entire record and transcript to be necessary for appeal.” We conclude the questions are properly before this court for review. Further, because this court agrees the decision of the DEQ is contrary to law and the evidence, we pretermit any discussion of the constitutionality of the applicable laws.
SUFFICIENCY OF THE EVIDENCE
The DEQ found the defendant had violated Section 11.2 of the Air Quality Regulations and La.R.S. 30:1087. Section 11.2 states:
“No person shall cause or allow the outdoor burning of waste material or other combustible material on any property owned by him or under his control except as provided in Section 11.3 below.”
La.R.S. 30:1087 provides:
“A. No person shall:
(1) Discharge air contaminants or noise pollution into the air of this state in violation of regulations of the secretary or the terms of any permit, license, or variance issued hereunder.
(2) Violate any rule or regulation adopted by the secretary under this Part.
B. The provisions of this Part shall not apply to persons who burn agricultural by-products in the field in connection with the planting, harvesting, or processing of agricultural products, nor to controlled burning of cotton gin agricultural wastes in connection with cotton gin operations, nor to controlled burning in connection with timber stand management, nor to controlled burning of pastureland or marshland in connection with trapping or livestock production.”
A violation of section 11.2 occurred because “despite previous warning [defendant] failed to take necessary action to extinguish an open burning at its landfill and allowed the fire to continue for an extended period_” Conversely, a violation of La. R.S. 30:1087 occurred because the defendant was found to have violated section 11.2, a “rule or regulation adopted by the secretary under this Part.”
Although the DEQ found the above violations occurred because an outdoor burning took place, section 11.1 of the Air Quality Regulations provides:
“Purpose. It is the purpose of this section to control outdoor burning of waste or other combustible material to prevent undesirable levels of air contaminants in the atmosphere.”
Therefore, it is evident the authority of the DEQ to control outdoor burnings is derived from the legislative prohibition contained in La.R.S. 30:1084 that no person shall discharge “air contaminants.”
In State v. Union Tank Car Co., 439 So.2d 377 (La.1983), the court pronounced:
“While it is true that La.R.S. 30:1085 and 1087 proscribe the discharge of all contaminants, it is apparent from looking to the Air Control Act as a whole that the aim of the legislation is the prevention of emissions of ‘undesirable levels’ of contaminants. It is well-settled that the standards which must accompany a delegation of legislative authority need not necessarily be set forth in express terms if they might reasonably be inferred from the statutory scheme as a whole. State v. Arizona Mines Supply Co., 107 Ariz. 199, 484 P.2d 619 (Ariz.1971); and that courts will not impute meanings which will lead to absurd results or extend statutes to situations which the legislature never intended should be covered thereby. Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (La.1946). Thus, the failure of the legislature to use the phrase ‘undesirable level’ in 30:1085 and 1087 does not defeat the statutory scheme, especially where it is clear from the Air Control Act itself that the legislature did not intend to proscribe the discharge of all air contaminants, however insignificant in quantity, but only those contaminants which reach ‘undesirable levels.’
*807 Under La.R.S. 30:1083(2), an ‘undesirable level’ of air contaminants is the presence in the atmosphere of such quantities and concentrations of contaminants as to appreciably injure human life beyond inconvenience, or as to materially injure or interfere with reasonable use of animal or plant life or property.” — at 383. (Underscoring ours.)
Likewise, sections 11.1 and 11.2 must be read in pari materia. Thus, a violation of section 11.2 will occur only when a person causes or allows the outdoor burning of waste material or other combustible material which results or is going to result in undesirable levels of air contaminants in the atmosphere. Surely, it could not have been the intention of the DEQ to proscribe every outdoor burning by adopting section 11.2.
In this instance, at every level of fact finding and scrutiny the DEQ never established the outdoor burning resulted or would result in undesirable levels of air contaminants, that is such quantities and concentrations of contaminants as to appreciably injure human life beyond inconvenience, or as to materially injure or interfere with reasonable use of animal or plant life or property.
In fact the DEQ reached an opposite conclusion. Judge McNeill in his “Consideration of Penalties and Recommendations” noted, “The violation herein was not serious as a threat to human life or health.” He further stated, “Beyond nuisance, there was little risk to human life or property.” In addition to adopting Judge McNeill’s findings, Secretary Norton found specifically:
“Although there was no direct risk to health or property, the fires and smoke were of sufficient gravity that various neighborhood residents complained to the Office.”
Therefore, no evidentiary basis for an assessment of penalty exists in this instance.[3] Indeed, the decision of DEQ is contrary to the law and the evidence. Accordingly, the decision and order of the Secretary must be reversed. Costs of these proceedings are to be assessed against the Department of Environmental Quality in the amount of $50.00.
REVERSED.

. The following are Judge McNeill’s findings and conclusions which were adopted by the Secretary with the exception of findings of fact numbers 13 and 16:
“IV. FINDINGS OF FACT
The following are found to be fact in this case:
1. Caldwell operates a site for the disposal of solid waste in West Monroe, Louisiana.
2. On the same site, Caldwell operates a facility for the repair and servicing of equipment owned by the company and used in the company’s oilfield operations.
3. The solid waste disposal facility is under the regulation of the Act.
4. At all times in question, Caldwell had no earth moving equipment at the site which was in operating condition.
5. At all times in question, Caldwell did have earth moving equipment being utilized in the company’s oilfield operations, at another location.
6. A fire, or fires, started at the Caldwell solid waste disposal site somewhere around July 28, 1983.'
7. The State contacted agents of Caldwell and notified them of the fires. These agents advised that they would put out the fire as expeditiously as possible.
8. At the time the fires started, Mr. Pete Caldwell was out of town on vacation; he returned on to the site on the morning of Monday August 1, 1983.
9. The fires were of such a nature that the only practicable method of extinguishing them was to cover the burning material with large quantities of soil, thereby cutting of (sic) the supply of oxygen.
10. No agent of Caldwell ordered the return of the company’s off-site earth moving equipment prior to the return of Mr. Pete Caldwell.
11. Agents of Caldwell did place water hoses on the burning areas, and brought in several truck loads of water; it is conceded, however, that these measures were largely, if not totally, ineffectual.
12. Upon his return to the site on August 1, 1983, Caldwell was confronted by agents of the State, who demanded that he extinguish the fires without delay. Mr. Caldwell testified that he was told to put out the fires 'right now', to which he admits responding ‘if you want the fire out right now, put it out yourself’, or words to that effect.
13. Mr. Caldwell ordered the return of the earth moving equipment from the oilfield location to the disposal site on Wednesday, August 3, 1983. It arrived on site Wednesday afternoon.
14. As a result of the efforts of the earth moving machine, the fire was put out. There was some dispute as to when the fire could be considered out. Certainly by Friday, August 5, and probably by August 4, it was out.
15. The earth moving equipment could have been brought to the site two (2) days earlier, but was not for economic reasons, according to Mr. Caldwell’s testimony. In his,testimony, and after describing the economic cost of earlier removal of the machine from the oilfield job, he said, T can pay a lot of $2,000.00 with that’. The reference apparently to the previou (sic) penalty assessed by the Assistant Secretary.
16. In the absence of Mr. Pete Caldwell, no one had the authority to order the earth moving equipment back from the oilfield job. Upon his return, he was unwilling to do so, until the oilfield job was completed.
17. There was no provision for the availability of the appropriate machinery, in working condition, at the disposal site prior to the start of the fires.
18. The cause of the fires was, and is unknown; no agent of Caldwell started the fires.
19. Had appropriate machinery been available at the site, in working condition, the fires could have been extinguished soon after they were reported.
20. Had appropriate machinery been ordered to the site sooner by Caldwell’s agents, the fires could have been extinguished sooner.
21. Had Mr. Pete Caldwell given the order to return the machine sooner, the fires could have been put out sooner.
22. Had the agents of the State exercised greater diplomacy with Mr. Caldwell, perhaps he may have been disposed to act more quickly; had Mr. Caldwell acted with more diplomacy, perhaps he would have found the agents of the State more cooperative.
V. CONCLUSIONS OF LAW
Based on the above findings of fact, the following conclusions of law are reached:
1. While Caldwell did not start the fires, Caldwell had a duty, as operator of a solid waste disposal site, to have the necessary equipment available, and in working condition, to extinguish such fires as do start.
2. Caldwell had the further duty to expeditiously obtain the necessary equipment when it found that, due to its lack of preparation, the fires had started, and could not be controlled or extinguished in any other way.
3. Caldwell should have had an agent available with the necessary authority to order back the earth moving machine at once, even though Mr. Pete Caldwell was absent.
4. Mr. Pete Caldwell should have ordered the machine back as soon as he became aware of the problem.
5. The above listed failures on the part of Caldwell, which resulted in the uncontrolled, *804 unpermitted, burning for the time alleged, do constitute violations of the Act and the regulations pursuant thereto.
6. One (1) violation per day for the six (6) days charged are found to have occurred, a total of six (6) violations."

. The text of the rule appears as follows:
“Rule 2. Appeals from Final Decisions of the Environmental Control Commission
Section 1. Application for Appeal. Every application for an appeal from a final decision of the Environmental Control Commission shall be filed with the Commission in writing as required by law and shall include an assignment of errors, which shall set out separately and particularly each error asserted and a designation of the portions of the record desired to be incorporated into the transcript. Within five (5) days after the filing of an application for appeal, any other party to the appeal may file a designation of additional portions of the record to be included for a proper review of the questions comprised within the assignment of errors. The Commission shall transmit to the Court of Appeal, First Circuit, as a transcript of the record, only the portions so designated. Costs for the inclusion of any unnecessary part of the record in any transcript may be assessed against the party requiring such inclusion. If by written stipulation filed with the Commission, all parties agree on the portions of the record to be included in the transcript only such portions shall be included. In all cases the application for appeal, the assignment of errors and the designation of the record, shall be copied into the transcript. The Commission shall certify the correctness of the transcript.

. Mr. Gustave A. Von Bodungen, administrator of the Air Quality Division, and Mr. Barry Vogt, whose job is to analyze the data obtained from air pollution monitors and equipment, testified in behalf of DEQ. These men, however, proffered no testimony as to whether or not undesirable levels were present or would become present if the fire was allowed to continue.