Dear Mr. Lafser:
This opinion is issued in response to your question asking:
 Do the laws of the State of Missouri provide adequate authority to the Department of Natural Resources to carry out a program for the control of underground injection wells as described in the Program Description submitted to the EPA and as required by 40 CFR Part 145?
 INTRODUCTORY EXPLANATION
General:
Section 204.026[1] provides that the Missouri Clean Water Commission shall have, inter alia, the power to:
 (8) Adopt, amend, promulgate, or repeal after due notice and hearing, rules and regulations to enforce, implement, and effectuate the powers and duties of sections 204.006 to 204.141 and any required of this state by any federal water pollution control act, and as the commission may deem necessary to prevent, control and abate existing or potential pollution;
* * *
 (15) To exercise all incidental powers necessary to carry out the purposes of sections 204.006 to 204.141, assure that the state of Missouri complies with any federal water pollution control act, retains maximum control thereunder and receives all desired federal grants, aid and benefits.
Thus, the department may promulgate regulations as necessary to enforce "any federal water pollution control act" and as necessary to achieve and maintain maximum compliance with and control under "any federal water pollution control act." Moreover, the department has broad statutory authority to regulate, as necessary, to prevent, control, or abate existing or potential pollution.
Pollution is defined in Section 204.016(7) as:
 [S]uch contamination or other alteration of the physical, chemical or biological properties of any waters of the state, including change in temperature, taste, color, turbidity, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substance into any waters of the state as will or is reasonably certain to create a nuisance or render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, industrial, agricultural, recreational, or other legitimate beneficial uses, or to wild animals, birds, fish or other aquatic life.
Waters of the state, as defined in Section 204.016(15), includes bodies of subsurface water. 40 CFR Section 146.3 defines a well injection as:
 the subsurface emplacement of "fluids" through a bored, drilled or driven "well;" or through a dug well, where the depth of the dug well is greater than the largest surface dimension.
We conclude that a well injection, i.e., the subsurface emplacement of fluids, constitutes pollution of the waters of the state, as defined above. Consequently, the department possesses the authority, under the Missouri Clean Water Law, to regulate all injection wells.
The authority of the state to act in a preventative capacity with respect to pollution of the waters of the state has been recognized by the Missouri courts. In State ex rel. Ashcroft v.Mathias, 616 S.W.2d 882 (Mo.App., E.D. 1981) the court recognized that the permit system for dischargers served the statutory purpose of preventing rather than merely abating pollution. Similar statements appear in State ex rel. Ashcroft v. UnionElectric Company 559 S.W.2d 216, 221 (Mo.App., K.C.D. 1977) ("The Missouri Clean Water Law . . . is ensconced in a broad, pervasive legislative intent to keep the `waters of the state' free of `pollution' from external causes and sources." (Emphasis in original.)) and Hammack v. Missouri Clean Water Commission, 659 S.W.2d 595,600 (Mo.App., S.D., 1983) ("Clean water is the essence and lifeblood of our society. Without it we will perish. The legislature had commendably, through the passage of the Clean Water Act, given the tools to the commission to insure that the waters of Missouri remain clean and pure, and to abate pollution in those areas where it has already occurred.").
State ex rel. Ashcroft v. Union Electric Co., 559 S.W.2d 216
(Mo.App., K.C.D. 1977) further clarifies the definition of pollution by specifying the requirement that it must be caused by the introduction into waters of the state of some substance from an external source and not, as the state there contended, by the operation of a hydroelectric dam in such a way as to cause levels of dissolved oxygen in downstream water to fall below the levels necessary to support aquatic life. This case, however, has no impact on the definition of pollution as that term relates to well injections because such injections, by definition, involve the emplacement of a fluid from an external source into the subsurface.
Classes I and IV:
Section 577.155.1, RSMo Supp. 1984, prohibits the construction and use of any waste disposal well located in the state. Section 577.155.2 defines "waste disposal well" as "any subsurface void porous formation or cavity, natural or artificial, used for disposal of liquid or semiaqueous waste except as excluded in subsection 3 of this section." Section 577.155.3 contains certain exceptions.
Injection wells are defined by federal regulation as wells into which "fluids" are injected (40 CFR 146.3). Class I wells are fluid injection wells used to inject hazardous, industrial, or municipal waste beneath the lower-most formation containing an underground source of drinking water within one quarter mile of the well bore. Class IV injection wells are wells used to dispose of hazardous or radioactive waste into or above a formation which contains an underground source of drinking water within one quarter of a mile. Because neither Class I nor Class IV wells are within any of the exceptions in Section 577.155.3 and not otherwise authorized, we conclude that the construction or use of any Class I or Class IV injection well is prohibited by Section 577.155.
One additional exception to the prohibition of Section 577.155.1 is the injection or return of fluids into subsurface formations in connection with oil or gas operations regulated by the State Oil and Gas Council pursuant to Chapter 259, RSMo. Section 577.155.4(1). (Such practice is also exempted from the coverage of the Missouri Hazardous Waste Management law in identical language at Section260.355(4), RSMo 1978.) It is the opinion of the Missouri Attorney General that "in connection with oil or gas operations," as that language is used in Chapters 577 and 260 exclusions, must be read to include only those operations directly associated with the recovery of oil or gas from subsurface formations and not operations associated with the refining or other processing of the minerals after they have been extracted from the earth. This conclusion is based on the fact that Chapter 259 regulates only the drilling of wells, the production of oil or gas from those wells, the plugging of the wells, and certain measuring and recording functions. Neither Chapter 259 nor the regulations promulgated under it at 10 CSR Div. 50 address such areas as the refining of the raw product. Indeed, the powers and duties of the Oil and Gas Council as established by the legislature in Section259.070, RSMo Supp. 1984, do not extend to refinery operations. The exclusion in Sections 577.155.4(1) and 260.355(4) does not extend to the injection of waste associated with refinery operations or originating from any other source except the extraction operations. Thus, the prohibition in Section 577.155 against any waste disposal well extends to wells used to dispose of any hazardous waste as the term "hazardous waste" is defined in the federal regulations at 40 CFR Part 261.3 and .4 including the exclusion of "Drilling fluids, produced waters and other wastes associated with the exploration development, or production of crude oil, natural gas or geothermal energy" at 40 CFR, Part 261.4(b)(5).
We also note that the state provisions banning all Class I injection wells are more stringent than the federal requirements under 40 CFR 146, Subpart B, which do allow Class I injection wells when authorized by permit.
Class V:
Under the federal regulatory scheme, Class V wells are authorized by rule "until further requirements under future regulations become applicable." 40 CFR Section 144.24. However, the director may require permits for such wells. 40 CFR Section 144.25.
In Missouri Class V wells are regulated by three different mechanisms depending on the type of well.
Class V wells which may be classified as waste disposal wells and not subject to any of the exceptions in Section 577.155.3, are prohibited by Section 577.155.1. Examples of such wells include those listed in 40 CFR Section 146.5(e)(4), (5), (9) and (11).
Groundwater heat pump injection withdrawal wells serving more than eight single family residences or operating at a combined injection/withdrawal rate of more than 600,000 British Thermal Units are subject to the special permitting requirement of 10 CSR 20-6.070(1)(B).
All other types of Class V wells are subject to the general permitting requirements of Chapter 204 and 10 CSR 20-6, as detailed below.
Section 204.051.2, RSMo Supp. 1983, of the Missouri Clean Water Law provides, in part:
 2. It shall be unlawful for any person to build, erect, alter, replace, operate, use or maintain any water contaminant or point source in this state that is subject to standards, rules or regulations promulgated pursuant to the provisions of sections 204.006 to 204.141
unless he holds a permit from the commission, subject to such exceptions as the commission may prescribe by rule or regulation. . . .
"Water contaminant source" is defined in Section 204.016(13) as:
 [T]he point or points of discharge from a single tract of property on which is located any installation, operation or condition which includes any point source defined in sections 204.006 to 204.141 and nonpoint source under any federal water pollution control act, which causes or permits a water contaminant therefrom to enter waters of the state either directly or indirectly;
"Point source," as defined in Section 204.016(6), "means any discernable, confined, and discrete conveyance, including but not limited to any . . ., well, . . . from which pollutants are or may be discharged." A water contaminant, as defined in Section204.016(12), is:
 any particulate matter or solid matter or liquid or any gas or vapor or any combination thereof, or any temperature change which is in or enters any waters of the state either directly or indirectly by surface runoff, by sewer, by subsurface seepage or otherwise, which causes or would cause pollution upon entering waters of the state, or which violates or exceeds any of the standards, regulations or limitations set forth in sections 204.006 to 204.141 or any federal water pollution control act, or is included in the definition of pollutant in such federal act.
And finally, "waters of the state" is defined in Section204.016(15) as "all rivers, streams, lakes, and other bodies of surface or subsurface water. . . ."
Reading these provisions together we conclude that it is unlawful under Section 204.051.2 to build, erect, alter, replace, operate, use, or maintain any well which discharges or may discharge pollutants into subsurface waters and which is subject to standards, rules or regulations of the Clean Water Commission, unless a permit to do so has been obtained from the Commission. We also believe that an injection well is a point source that is subject to standards, rules and regulations, and that construction or operation of an injection well would require a permit from the Commission.
Regulation 10 CSR 20-6.010(1)(A) describes who must apply for a permit:
 (A) All persons who build, erect, alter, replace, operate, use, or maintain existing or proposed point sources, water contaminant sources or wastewater treatment facilities shall apply to the department for the permits required by the Missouri Clean Water Law and these regulations. The department shall issue these permits in order to enforce the Missouri Clean Water Law and regulations and administer the NPDES program.
Regulation 10 CSR 20-6.010(1)(B) identifies sources which are exempt from the permit requirement:
 (B) The following are exempt from permit regulations:
1. Nonpoint source discharges;
2. Service connections to sewer systems;
 3. Internal plumbing and piping or other water diversion or retention structures within a manufacturing or industrial plant or mine, which are an integral part of the industrial or manufacturing process or building, or mining operation. An operating permit or general permit shall be required, if such piping, plumbing, or structures result in a discharge to waters of the state;
 4. Routine maintenance or repairs of any existing sewer system, wastewater treatment facility, or other water contaminant or point source;
5. Single family residences; and
 6. Separate storm sewers are subject only to the general permit requirements.
Reading these two provisions together, we conclude that all water contaminant sources, point sources and wastewater treatment facilities which are not specifically exempted in subparagraph (B) are required to be permitted. Class V injection wells are point sources and the only Class V wells which fall into one of the six exempted categories above are single family residence wells and separate storm sewers. However, storm sewers are subject to the general permitting requirements of 10 CSR 20-6.010(14) and single family residence wells are exempted from UIC requirements by40 CFR Section 146.5(e)(9). Thus, we further conclude that a permit must be obtained under the general permitting provisions of Chapter 204 and 10 CSR 20-6.010 for the construction or operation of a Class V injection well other than a heat pump.
Thus, the only Class V wells not subject to permitting requirements are heat pumps serving eight or fewer single family residences with a combined injection/withdrawal rate of less than 600,000 BTU's per hour which are exempted under 10 CSR 20-6.070(1)(c).
40 CFR Section 144.26 requires the owners or operators of all Class V wells to submit specific inventory information. This requirement is complied with by the permitting requirement because all inventory information is collected as part of the permitting process. For those Class V wells exempted from the permit requirement by 10 CSR 20-6.070(1)(A), inventory information is collected under the authority of 10 CSR 20-6.070(1)(D) which requires the owners or operators of all such wells to submit the required information.
Because Class I and IV wells are prohibited by law in Missouri and Class V wells are subject only to the inventory requirement and a showing of state authority to promulgate regulations for this Class once such requirements are in place at the federal level, topics which have been covered above, the remainder of this opinion will address only Class III wells.
1. Prohibition of Unauthorized Injection
 State Statutory and Regulatory Authority:
Class III: 10 CSR 20-6.090(1)(C)
Remarks of Attorney General
 10 CSR 20-6.090(1)(C) provides that:
 "All persons who build, erect, alter, replace, operate, use or maintain existing or proposed Class III injection/production wells shall apply to the department for permits required by these regulations. . . ."
Class III wells are defined in 10 CSR 20-6.090(1)(A) consistently with the federal definition in 40 CFR 144.6(c). The permitting process operates as an authorization and thus we conclude that the permit requirement is equivalent to a prohibition of unauthorized injections.
2. Prohibition of Endangering Drinking Water Sources
A. For Authorization of Underground Injection by Permit
 State Statutory and Regulatory Authority:
 10 CSR 20-6.090(4)(A)1. 10 CSR 20-6.070(4)(A)4. 204.051-1(1) 204.016(7) and (15) 10 CSR 20-7.031(1)(B)6.
 Remarks of Attorney General
For Class III wells authorized by permit, those permits require the permittee to comply with all applicable provisions of the Missouri Clean Water Law and the regulations promulgated by the Commission (10 CSR 20-6.090(4)(A), and 10 CSR 20-6.070(4)(A)4.). The Clean Water Law, at Section 204.051.1(1), provides that it is unlawful for any person "to cause pollution of any waters of the state or to place or cause or permit to be placed any water contaminant in a location where it is reasonably certain to cause pollution of any waters of the state."
Waters of the state, as defined at Section 204.016(15) include subsurface waters; and pollution, as defined at Section204.106(7), include any contamination or discharge "into any waters of the state as will or is reasonably certain to create a nuisance or render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, industrial, agricultural, recreational, or other legitimate beneficial uses, or to wild animals, birds, fish or other acquatic life."
Endangerment of drinking water supplies is clearly a result which is "harmful, detrimental or injurious to public health, safety or welfare." Moreover, beneficial uses is defined at10 CSR 20-7.031(a)(B)6 to include drinking water supplies.
Thus we conclude that under state law no permit will be granted or continued in force for an underground injection that endangers drinking water sources.
B. For Authorization of Underground Injection by Rule
 State Statutory and Regulatory Authority
 10 CSR 20-6.090(1)(C)
Remarks of Attorney General
Class III underground injection wells are authorized by permit only.
3. Prohibition of Movement of Fluid into a USDW
 State Statutory and Regulatory Authority
 10 CSR 20-6.090(4)(B) 10 CSR 20-6.090(4)(C)
 Remarks of Attorney General
 10 CSR 20-6.090(4)(B) provides that no Class III well may be operated or maintained in a manner that allows the movement of fluid containing any contaminant into underground sources of drinking water.
10 CSR 20-6.090(4)(C) provides that:
 "[I]f any water quality monitoring of any underground source of drinking water indicates the movement of any contaminant into the underground source of drinking water, the director shall prescribe such additional requirements for construction, corrective action, operation, monitoring, or reporting (including closure of the injection/production well) as are necessary to prevent such movement. These additional requirements shall be imposed by modifying the permit in accordance with this regulation, or the permit may be terminated."
4. Authority to Issue Permits or Rule
 State Statutory and Regulatory Authority
(1) By permits
 Section 204.026(13) and (15) 10 CSR 20-6.090(1)(C)
(2) No Class III wells are authorized by rule.
(3) By area permit
 Section 204.026(13) 10 CSR 20-6.090(3)(D)
(4) No Class III wells are authorized by emergency permit.
Remarks of Attorney General
Section 204.026(13) authorizes the Missouri Clean Water Commission to issue permits "under such conditions as it may prescribe, to prevent, control or abate pollution or any violations of sections 204.006 to 204.141 or any federal water pollution control act."
Section 204.026(15) authorizes the Commission to:
 "Exercise all incidental powers necessary to carry out the purposes of sections 204.006
to 204.141, assure that the state of Missouri complies with any federal water pollution control act, retains maximum control thereunder and receives all desired federal grants, aid and benefits."
The regulatory provisions cited are the implementing sections.
Taken together, the two sections of the statute cited above authorize the Missouri Clean Water Commission to issue permits for underground injection wells in accordance with the regulations promulgated by the U.S.E.P.A.
5. Authority to Condition Authorized Injection Activities
 State Statutory and Regulatory Authority
Section 204.026(13) and (15)
 10 CSR 20-6.090(2) 10 CSR 20-6.090(2)(I)1.-6. 10 CSR 20-6.090(3) 10 CSR 20-6.090(4) 10 CSR 20-6.090(5)(A) 10 CSR 20-6.090(4)(A)2.E. 10 CSR 20-6.090(4)(A)2. 10 CSR 20-6.090(4)(A)5.
 Remarks of the Attorney General
The two sections of the statute authorize the Missouri Clean Water Commission to condition permits for underground injection wells in accordance with 40 CFR Section 144.51 and Section 144.52.
The application procedure for Class III permits, including the information required of the applicant and factors the director must consider in making the permitting decision, are contained in 10 CSR 20-6.090(2). Permit issuance and appeal procedures are covered in 10 CSR 20-6.090(3). Required terms and conditions of the permit are specified in 10 CSR 20-6.090(4).10 CSR 20-6.090(5) further specifies that "no permit shall be issued whose terms and conditions do not comply with `relevant federal laws.'"
10 CSR 20-6.010(4)(A)2. provides that the director may modify or revoke the permit upon receipt of notice of a proposed transfer and for other reasons including, but not limited to, those listed.
10 CSR 20-6.090(4)(A)5. sets forth causes for which the director may terminate or deny renewal of a permit.
6. Authority to Impose Compliance Evaluation Requirements
A. Authority to Enter for Inspections.
 State Statutory and Regulatory Authority
 Section 204.026(20) Section 204.056.1 10 CSR 20-6.090(4)(A)6.
 Remarks of Attorney General
Section 204.026(20) of the Clean Water Law authorizes the Commission or authorized representatives to enter public or private property at reasonable times, upon reasonable notice, for the purposes of inspection or investigation of compliance with permit conditions. The section also provides for a suitably restricted search warrant, upon a showing of probable cause, if entry is refused. Probable cause, in the context of an administrative search, has been found by the Supreme Court to exist "[i]f a valid public interest justifies the intrusion contemplated."Camara v. Municipal Court, 387 U.S. 523, 538 (1967). The public interest in the maintenance of a safe drinking water supply is certainly such a valid interest. Section 204.056.1 provides authority for investigations of alleged violations of permit terms or conditions.
10 CSR 20-6.090(4)(A)6 authorizes representatives of the department to enter into a permittee's premises for the purposes of inspection, sampling and access to and copying of pertinent records.
The above provisions provide authority for entry onto a permittee's premises in accordance with 40 CFR Section 144.51(i).
B. Authority to Conduct Inspections and Require Monitoring.
The authority to conduct inspections is covered in Part 6.a. above.
State Statutory and Regulatory Authority
Section 204.026(23)
 10 CSR 20-6.090(4)(A)9 10 CSR 20-6.090(4)(A)10 10 CSR 20-6.090(4)(A)11 10 CSR 20-6.090(4)(A)12 10 CSR 20-6.090(4)(D)
 Remarks of Attorney General
Section 204.026(23) authorizes the Commission to require permittees to:
 "[C]onduct any tests and monitoring necessary to establish and maintain records and to file reports containing information relating to measures to prevent, lessen or render any discharge less harmful or relating to rate, period, composition, temperature, and quality and quantity of the effluent, and any other information required by any federal water pollution control act or the executive secretary hereunder."
The regulations cited contain the specific requirements for monitoring and reporting. The above cited provisions provide sufficient authority for the required monitoring activities specified in 40 CFR Section 144.51(i).
 C. Authority to require the keeping of records and making of reports.
 State Statutory and Regulatory Authority
Section 204.026(23)
 10 CSR 20-6.090(1)(F) 10 CSR 20-6.090(4)(A)8 10 CSR 20-6.090(4)(A)9 10 CSR 20-6.090(4)(A)10 10 CSR 20-6.090(4)(A)11 10 CSR 20-6.090(4)(A)12
 Remarks of Attorney General
Section 204.026(23) as noted above in 6.b. authorizes the Commission to require permittees to keep records and prepare reports. The regulations cited contain specific recording and reporting requirements. These provisions are ample authority for the implementation of the requirements in 40 CFR Section 144.51(1).
7. Authority for Enforcement Requirements
 A. Authority to Issue Cease and Desist or Temporary Restraining Orders
 State Statutory and Regulatory Authority
 Section 204.076.1 Section 204.056.3 Section 640.130.1
 Remarks of Attorney General
The above-cited sections of the statutes authorize the Department of Natural Resources to issue ex parte orders against unauthorized underground injection practices which pose imminent threats of harm to the public health or environment, or, in the alternative, to request the attorney general to bring a suit for injunctive action in the courts of the state under the same conditions.
B. Authority to Sue
 State Statutory and Regulatory Authority
Section 204.076.1
Remarks of Attorney General
The above-cited section authorizes the Clean Water Commission or the Department director to request either the Attorney General or a prosecuting attorney to sue in the courts of this state for violations of any program requirement or permit condition without the necessity of prior revocation of a permit.
C. Penalties
(1) Civil Penalties
State Statutory and Regulatory Authority
Section 204.076.1
Remarks of Attorney General
The above-cited section of the statute authorizes suit for the assessment of a penalty not to exceed $10,000 per day for each day, or a part thereof, the violation occurs and continues to occur as the court deems proper.
(2) Criminal Fines
State Statutory and Regulatory Authority
Section 204.076.3
Remarks of Attorney General
The above-cited section of the statute authorizes suit seeking criminal penalties against any person who willfully or negligently commits any violation set forth under subsection 1 of not less than $2500 or nor more than $25,000 per day of violation. Second and successive convictions for violation of the same provision are punishable by a fine of not more than $50,000 per day.
N.B. The penalty provisions under Section 577.155 for Class I and IV wells do not satisfy the federal requirements because of the absence of civil penalties and because the amount of the criminal fine is less than five thousand dollars for some offenders. Nevertheless, other sanctions which do meet these requirements are available to address Class I and IV wells.
Class I and IV wells which dispose of hazardous waste would be subject to the civil and criminal penalties of the Missouri Hazardous Waste Management Law, in addition to the sanctions of Section 577.155. The construction and use of Class IV wells, and Class I wells which dispose of hazardous waste, would violate Section 260.395.7, RSMo Supp. 1983, which prohibits the construction, alteration, or use of a hazardous waste facility without a permit. Of course, no permit could be issued for these wells in light of the prohibition in Section 577.155. Section 260.425, RSMo Supp. 1983, provides for civil penalties of up to ten thousand dollars per day and criminal penalties of up to twenty-five thousand dollars per day for violations of Sections 260.350-260.430, as amended. These penalties meet the requirements of40 CFR 145.13.
Class I and IV wells which dispose of wastes which cannot be defined as hazardous wastes would be subject to the civil and criminal penalties of the Missouri Clean Water Law. Any such well which discharges or may discharge a pollutant to waters of the state would fall within the definition of both "point source" as defined in Section 204.016(6) and "water contaminant source" as defined in Section 204.016(13). As previously discussed in this opinion, the operation of a water contaminant source without a permit from the Clean Water Commission is unlawful. No permit could be issued for those wells in light of the prohibition in Section 577.155. Section 204.076 provides for civil penalties of up to ten thousand dollars per day and criminal penalties of up to twenty-five dollars per day for violations of Sections 204.006-204.141, as amended. These penalties meet the requirements of40 CFR 145.13.
Neither Section 577.155 nor Section 204.082, RSMo Supp. 1983, both of which classify certain illegal injection practices as misdemeanors, and provide for criminal penalties that are inadequate under the federal standards, in any way constrain the department from taking enforcement actions and seeking penalties under the authority of Section 204.076 or Section 260.425. These former sections simply classify the practices as offenses which may be prosecuted by local law enforcement authorities without the requirement of referral from the department.
D. Authority to seek appropriate penalties
 State Statutory and Regulatory Authority
Section 204.076
 Remarks of Attorney General
The section of the statute which authorizes the imposition of penalties imposes only upward limits, thereby affording flexibility to the agency to seek lesser amounts where such is warranted by the circumstances. Moreover, Section 204.076.4 provides that penalties shall not be imposed for violations caused by an act of God, war, strike, riot, or other catastrophe.
E. Public participation
 State Statutory and Regulatory Authority
 10 CSR 20-6.020(7) Rule 52.12(a), V.A.M.R.
 Remarks of Attorney General
Rule 52.12(a), Intervention of Right, provides that anyone shall be permitted to intervene in an action, inter alia, "when the applicant claims an interest relating to the property or transaction which is the subject of the action, and he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
Regulation 10 CSR 20-6.020(7) provide that a party may intervene in a hearing before the Clean Water Commission, and such application for intervention shall be ruled on by the Commission in accordance with the standards of Rule 52.12. The above-cited sections provide for a right of public participation consistent with the requirements of 40 CFR Section 145.13(d)(1).
8. Authority for Public Participation in Permit Processing
 State Statutory and Regulatory Authority
 Section 204.026(8) Section 204.026(15) 10 CSR 20-6.020
 Remarks of Attorney General
The above-cited sections of the Clean Water Law authorize the Commission to promulgate regulations allowing for adequate public involvement and participation in permit processing.10 CSR 20-6.020(1) addresses draft permits. Public comment is covered in 10 CSR 20-6.020(1)(B). Public hearings are provided for in 10 CSR 20-6.020(4) and response to comment on the final permit is covered in 10 CSR 20-6.020(1)(G).
9. Authority to Apply Technical Criteria and Standards for the Control of Underground Injection not Less Stringent than 40 CFR part 146 and Section 1421(a) and (b)(1)).
 State Statutory and Regulatory Authority
 Section 204.026(8) Section 204.026(15)
 Remarks of Attorney General
The above-cited sections of this statute authorize the Commission to adopt, amend, promulgate, or repeal rules and regulations as required of this state "by any federal water pollution act." The statute gives the Commission further incidental powers as necessary to assure that the State of Missouri complies with any federal water pollution control act and retains maximum control thereunder. The cited sections of the statutes authorize the Commission to apply technical criteria and standards for the control of underground injection not less stringent than those contained at 40 CFR part 146.
10. Classification of Injection Wells
See introductory explanation, supra.
11. Elimination of Certain Class IV Wells
See introductory explanation, supra.
12. Authority to identify Aquifers that are Underground Sources of Drinking Water (U.S.D.W.) and to exempt Certain Aquifers
 State Statutory and Regulatory Authority
 Section 204.026(5) Section 204.026(15)
 Remarks of Attorney General
The above-cited sections of the statute authorize the commission to conduct studies, investigations, and research and to exercise all incidental powers as necessary to assure compliance with any federal water pollution control act and to retain maximum control thereunder. These sections thus provide sufficient authority to undertake a program to identify U.S.D.W. aquifers and exempt certain aquifers in accordance with the requirements of 40 CFR Section 144.7 and Section 146.4. The department has entered into an agreement to undertake such a program in the Memorandum of Understanding.
13. Authority over Federal Agencies and Persons Operating on Federally Owned or Leased Property
 State Statutory and Regulatory Authority
 Section 204.016(5) Section 204.051
Section 204.076
 Remarks of Attorney General
Section 204.051 provides that it is unlawful for any person
to cause pollution of any waters of the state, to discharge any water contaminants into any waters of the state, or to built, erect, alter, replace, operate, use, or maintain any water contaminant or point source in the state without a permit.
Section 204.076 provides that it is unlawful for any person
to cause or permit any discharge of water contaminants from any water contaminant or point source in violation of Chapter 204 or any standard rule or regulation promulgated pursuant thereto. The penalty provisions of this section are similarly worded to refer to "any person."
In Section 204.016(5) the word person is defined to include "any agency, board, department, or bureau of the state or federal government." Thus while Chapter 204 does not specifically address the question of its applicability to federal agencies and facilities, it is the opinion of this office that the provisions of Chapter 204 govern underground injection well activities by federal agencies and on federal lands.
14. State Authority over Indian Lands.
There are no Indian lands located within the State of Missouri.
15. Authority to Revise State Underground Injection Control Programs.
 State Statutory and Regulatory Authority
 Section 204.026(8) Section 204.026(15)
 Remarks of Attorney General
The above cited sections of the statute authorize the Commission to adopt, amend, promulgate or repeal rules and regulations as required by any federal water pollution control act. The statute further authorizes the Commission to exercise all incidental powers as necessary to assure that the State of Missouri complies with any federal water pollution control act and retains maximum control thereunder. Together these two sections of the statute provide adequate authority to the state to revise regulations governing the state underground injection control program.
16. Authority to Make and Keep Records and Make Reports on its Program Activities, all as prescribed by the Environmental Protection Agency.
 State Statutory and Regulatory Authority
Section 204.026(15)
Remarks of Attorney General
The above-cited section, authorizing the Commission to exercise all incidental powers necessary to carry out the purposes of Chapter 204 and to assure compliance with any federal water pollution control act, provides adequate authority to require the making and keeping of records and reports on program activities in accordance with the requirements of the Environmental Protection Agency.
17. The State Must Have Authority to Make Available to EPA upon Request, without Restriction, any Information Obtained or Used in the Administration of the State Program, Including Information Claimed by Permit Applicants as Confidential.
 State Statutory and Regulatory Authority
Section 204.026(20)
Remarks of Attorney General
Section 204.026(20) governs the disclosure of information obtained by the Department of Natural Resources or the Clean Water Commission under the Missouri Clean Water Law. The general rule is that all information will be made available to the public. However, if the information constitutes trade secrets or confidential information, other than effluent data, it shall be kept confidential unless disclosure is required under any federal water pollution control act.
We note that certain information submitted to EPA under the federal program is also subject to nondisclosure requirements. EPA has promulgated regulations at 40 CFR Part 2 governing the handling of information submitted under claim of confidentiality. One of the categories of information which is subject to federal confidentiality requirements is confidential business information. 40 CFR 2, Subpart b. We read the federal regulations to provide protection for as broad a category of business information as is protected by Section 204.026(20). See 5 U.S.C. § 552(b)(4);40 CFR 2.201(e), 2.208(c), and 2.208(e)(1).
In light of the fact that federal regulations at40 CFR Part 2 facially provide the same degree of protection for trade secrets and confidential business information as is provided by the state statute, we believe that Section 204.026(20) does not prohibit the state from sharing such information with EPA. So long as EPA can protect the information to the same extent as the state, assuming protection is warranted, we do not view EPA as being a part of "the public" as that term is used in Section204.026(20), thus, EPA is entitled to information submitted to the state, even if submitted to the state under a claim of confidentiality. All information not subject to confidentiality claims would be available to EPA without restriction. Our opinion in regard to the above is premised exclusively on the protection facially afforded by 40 CFR Part 2 against improper disclosure of confidential information.
CONCLUSION
The laws of the State of Missouri provide adequate authority to the Department of Natural Resources to carry out a program for the control of underground injection wells as described in the Program Description submitted to the EPA and as required by40 CFR Part 145.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] All references to Missouri statutes are to RSMo 1978, unless otherwise noted.