NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEONARD JOSEPH VALENTINE, *Appellant.*

No. 1 CA-CR 13-0841
FILED 3-17-2016

Appeal from the Superior Court in Maricopa County
No.  CR2012-006283-001
The Honorable Peter C. Reinstein, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Droban & Company PC, Anthem
By Kerrie M. Droban
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

J O H N S E N, Judge:

¶1 Leonard Joseph Valentine appeals his convictions and resulting sentences for five counts of molestation of a child, Class 2 felonies and dangerous crimes against children (Counts 1-4 and 7); two counts of furnishing obscene or harmful items to minors, Class 4 felonies (Counts 5 and 6); one count of sexual conduct with a minor, a Class 2 felony and dangerous crime against children (Count 8); one count of attempted sexual conduct with a minor, a Class 3 felony and dangerous crime against children (Count 9); and 27 counts of sexual exploitation of a minor, Class 2 felonies and dangerous crimes against children (Counts 10-36). Valentine challenges the superior court's pretrial evidentiary rulings, and contends the court erred in denying his motion for judgment of acquittal. Valentine also argues he was improperly denied a speedy trial. For the reasons that follow, we vacate the convictions and sentences for Counts 33-35. In all other respects, we affirm the convictions and resulting sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Valentine lived with his female friend, T., and sometimes supervised her 10-year-old daughter, H., at home while T. worked.[1] When he was alone with H., Valentine would photograph the girl as she posed in a sexual manner wearing a skirt but no underwear. At some point, Valentine introduced H. to a 9 or 10-year-old girl, Am., and he took sexually explicit pictures of the two girls together.

¶3 One day, H. brought home two other friends, K., 10 years old, and K.'s sister, Al., 9 years old, and introduced them to Valentine. Valentine showed the three children computer images of naked girls posing and engaging in sexual activity. At Valentine's direction, H., K. and Al.

---

[1] Upon review, we view the facts in the light most favorable to sustaining the judgment and resolve all inferences against Valentine. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

undressed and posed in suggestive poses for him while Valentine photographed them. On two separate occasions, while taking pictures of the three girls in his bedroom, Valentine touched their vaginas and instructed them to do the same to each other. K. and Al. eventually disclosed the incidents to their parents, who called the police.

¶4 During their investigation, police searched Valentine's bedroom pursuant to a warrant and seized a computer, cameras, DVDs, CDs and floppy discs, all containing numerous sexual images of children. They discovered folders on the computer's hard drive titled "Am[.] 9 XXX," "H[.] XX," and "H[.] XXX," each containing images of Am. and H. partially clothed. A "point-and-shoot" camera contained four photographs of H., K. and Al. posing in a suggestive manner. The investigation also revealed that Valentine had licked H.'s vagina and attempted to penetrate her with his penis.

¶5 The State charged Valentine with 36 crimes allegedly committed against the minor victims. At the conclusion of the State's case at trial, Valentine unsuccessfully moved for a judgment of acquittal on all counts pursuant to Arizona Rule of Criminal Procedure 20 ("Rule 20"). The jury found him guilty of all the charges. The superior court imposed a combination of concurrent and consecutive sentences, the longest of which is life imprisonment. Valentine timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2016) and -4033(A)(1) (2016).[2]

## DISCUSSION

### A. Denial of Rule 20 Motion.

¶6 Valentine argues the superior court erred in denying his Rule 20 motion. The State concedes that insufficient evidence supports Valentine's convictions for Counts 33-35. We accept this concession and vacate Valentine's convictions and sentences for Counts 33-35. We conclude the superior court properly denied Valentine's Rule 20 motion as to the remaining counts.

¶7 We review *de novo* a superior court's denial of a Rule 20 motion. *State v. Bible*, 175 Ariz. 549, 595 (1993). A Rule 20 motion must be

---

[2] Absent material revision after the date of an alleged offense, we cite a statute's current version.

granted when "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). Thus, the purpose of such a motion is to challenge the sufficiency of the evidence. *See State v. Jones*, 125 Ariz. 417, 419 (1980). "'Substantial evidence' is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* We resolve any conflict in the evidence in favor of sustaining the verdict, and we will reverse only if a complete absence of probative facts supports the conviction. *State v. Guerra*, 161 Ariz. 289, 293 (1989); *State v. Scott*, 113 Ariz. 423, 424-25 (1976). We will not weigh the evidence; that is the function of the jury. *Guerra*, 161 Ariz. at 293. If reasonable minds could differ on the inferences to be drawn from the evidence, whether direct or circumstantial, the case must be submitted to the jury. *State v. Landrigan*, 176 Ariz. 1, 4 (1993).

### 1. Counts 1-4 and 7.

¶8 Counts 1 and 2 charged Valentine with molesting K. on or between October 1 and October 31, 2006, and on or about November 7, 2006. Counts 3 and 4 alleged Valentine molested Al. during the same time frames.[3] Count 7 alleged Valentine molested H. on or between November 9 and November 16, 2006. As charged here, molestation of a child involves the intentional or knowing touching of the genitals of a child who is under 15 years of age. A.R.S. § 13-1410(A) (2016); *see* A.R.S. § 13-1401(A)(3) (2016) (defining "sexual contact").

¶9 Valentine argues these five convictions should be reversed because the evidence failed to establish the molestations occurred "on a specific date" during the alleged time frames. Valentine also asserts K.'s testimony regarding the conduct alleged in Counts 1 and 2 was "uncorroborated" and otherwise insufficient because "no photographs were ever recovered." Regarding Count 4, Valentine additionally argues no evidence was presented to show he actually touched Al.

¶10 The State was not required to prove Valentine committed the alleged offenses on a specific date. *See State v. Verdugo*, 109 Ariz. 391, 392 (1973) ("It has been held repeatedly that it is sufficient under the law that the precise time of the act is unnecessary to be proven, if it is alleged that it occurred 'on or about' a given date."). Moreover, although the child victims

---

[3] The court granted the State's motion to amend Counts 1-4 to reflect the date of the offenses as between October 1, 2006 and November 7, 2006. This amendment does not affect our analysis.

had difficulty remembering the dates of the molestations, they, including Al., testified Valentine improperly touched them on two separate occasions when they visited H., and other trial evidence indicates K. and Al. visited H. at her home twice in 2006, on Halloween and on November 7. And, contrary to Valentine's suggestion, K.'s "uncorroborated" testimony that he twice molested her is sufficient to survive a Rule 20 motion. *See State v. Williams*, 111 Ariz. 175, 177-78 (1974) (uncorroborated testimony of sexual assault victim is sufficient to uphold conviction). Further, the lack of a photograph representing the sexual contact alleged in Counts 1 and 2 is of no consequence; the crime of molestation of a child requires no such evidence. Finally, regarding Count 7, the record establishes H. disclosed during a forensic interview that Valentine "touched [her] crotch area a couple nights" before he was arrested on November 16, 2006.

¶11 Based on the foregoing evidence, the court did not err in denying Valentine's Rule 20 motion with respect to the molestation counts.

### 2. Counts 5 and 6.

¶12 Counts 5 and 6 alleged Valentine, on or between October 1 and October 31, 2006, showed K. and Al., respectively, "computer photos of 'kids sucking balls' of an adult male." Valentine challenges the court's denial of his Rule 20 motion on the ground that no evidence demonstrated the alleged offenses occurred in October 2006. He also argues that the "adult male" referred to in the indictment was, according to the evidence, a boy under the age of 15.

¶13 The statute establishing the offense charged in counts 5 and 6 is A.R.S. § 13–3506(A), which provides, "It is unlawful for any person, with knowledge of the character of the item involved, to recklessly furnish, present, provide, make available, give, lend, show, advertise or distribute to minors any item that is harmful to minors." An item is "harmful to minors" if it depicts sexual activity or conduct that "the average adult applying contemporary state standards" would find unsuitable for minors due to a patently offensive appeal to prurient interests. A.R.S. § 13–3501(1)(a) (2016). When taken as a whole, the item also must lack any "serious literary, artistic, political, or scientific value for minors." A.R.S. § 13–3501(1)(b) (2016).

¶14 The trial evidence reveals that, when K. and Al. visited H.'s home on Halloween in 2006 and "some day prior," Valentine showed the girls pornographic images on his computer "[t]o give [them] ideas on how to pose." One image, described by the victims as "girls sucking balls,"

depicts young-looking women performing oral sex on a similarly aged male. Regardless of the age of the male in the image, this evidence is sufficient to sustain Valentine's convictions on Counts 5 and 6.

### 3. Counts 8 and 9.

¶15 Counts 8 and 9, respectively, charged Valentine with sexual conduct with a minor under age 15 and attempted sexual conduct with a minor under age 15 in violation of A.R.S. § 13-1405. In Count 8, the alleged offense occurred between October 20 and November 9, 2006. The offense in Count 9 allegedly occurred between November 9 and November 16, 2006.

¶16 "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is [a minor]." A.R.S. § 13-1405(A). If the victim is under fifteen years of age, the offense is a class 2 felony. A.R.S. § 13-1405(B). A person commits attempted sexual conduct with a minor if, while acting with the culpability necessary to commit the offense, the person intentionally does anything the person believes, under the circumstances, to be any step towards committing sexual conduct with a minor. *See* A.R.S. §§ 13–1001(A) (2016) and 13–1405.

¶17 Valentine argues the superior court erred in denying his Rule 20 motion on these charges because H. did not specify the dates of the alleged offenses. As we have already noted, however, the State was not required to prove the specific dates of the sexual conduct. *See Verdugo*, 109 Ariz. at 392.

¶18 H. testified that Valentine licked her vagina, and she informed an investigator that the incident occurred two to three weeks before Valentine was arrested on November 16, 2006. Thus, sufficient evidence establishes that Valentine engaged in sexual conduct with H. within the time range alleged in Count 8.

¶19 Regarding Count 9, H. testified that Valentine "tr[ied] to enter" her vagina with his penis. The record reflects that this incident occurred sometime in the fall of 2006.

¶20 Construing Valentine's argument, in part, to be a challenge to the specificity of the allegations in Count 9, we conclude the indictment was "sufficiently definite to inform [Valentine] of the offense charged." *See* Ariz. R. Crim. P. 13.2(a) and comment thereto ("The charging document need not contain allegations of time . . . except where necessary to give adequate

notice of the charges."). Valentine defended the charge in Count 9 by testifying that he *never* attempted to have sexual intercourse with H. He did not argue that the incident described by H. occurred, but happened at another time or was somehow innocent because he did not intentionally or knowingly perform the act. Accordingly, whatever difference exists between the alleged time frame in Count 9 and the trial evidence, Valentine was not prejudiced by the discrepancy. *See State v. Arizona Mines Supply Co.*, 107 Ariz. 199, 201 (1971) ("an information is sufficient . . . where [it] fairly indicates the crime charged, states the essential elements of the alleged offense and is sufficiently definite to apprise the defendant of the crime charged so as to allow him to prepare his defense"). The evidence supports Valentine's conviction on Count 9.

### 4. Counts 10-32 and 36.

¶21 A person commits sexual exploitation of a minor if he or she knowingly photographs or possesses a "visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13–3553(A) (2016). In relevant part, "exploitive exhibition" is defined as the exhibition of a person's genitals "for the purpose of sexual stimulation of the viewer." A.R.S. § 13–3551(5) (2016).

¶22 Regarding Counts 10-32, Valentine argues there was no "exploitive exhibition" as required by § 13–3553 because the State failed to present evidence that he or anyone else was sexually stimulated by the digital photographs forming the basis for those counts.

¶23 The photographs on which these counts are based all focus on the victims' exposed or partially exposed genitals. Although Valentine testified that he was not sexually aroused by the photographs the State presented substantial circumstantial evidence to permit a reasonable inference that he created and possessed the photographs for his sexual stimulation.

¶24 Significantly, the evidence shows Valentine would instruct the victims to pose sexually when he photographed them, and H. testified that, during one incident while she was prevented by a sheet from seeing Valentine, she heard a camera "click" when he touched his penis to her vagina. H. also testified Valentine told her that she "shouldn't tell anybody [about the pictures]. It is our little secret[.]"

¶25 The State also presented evidence that some 21 years before, at the age of 28, Valentine had been in a sexual relationship with a 14-year-old girl. The two shared an apartment for approximately eight months.

Valentine took sexually explicit nude photographs of her, and, as in this case, would direct the girl to pose in a sexual manner. Furthermore, around the same time, Valentine took similar pictures of another 14-year-old girl and kissed and fondled her.

**¶26**      The foregoing evidence reasonably implies that Valentine was sexually stimulated by young girls. Accordingly, the record establishes that he engaged the victims in "exploitive exhibition," within the meaning of the statute.

**¶27**      As for Count 36, Valentine contends the image underlying his conviction on that count depicts only the victim's partially covered genitals. He also argues the State failed to present evidence that he possessed the image on or about October 31, 2006, the date alleged in the indictment.

**¶28**      The photograph of H. shows her wearing a Halloween costume and pulling her underwear to the side to expose her vagina. The definition of "exploitive exhibition" only requires "actual exhibition . . . of the genitals," it does not require exhibition of the entire genital area.

**¶29**      The evidence also reflects that Valentine took the picture on October 31, 2006 using a digital camera found in his pants pocket on the day he was arrested. The image was automatically stored on the camera's "XD card." Valentine did not refute this evidence at trial; instead, he claimed that the picture was not child pornography because it did not depict an actual sex act.

**¶30**      In sum, because substantial evidence supports Valentine's conviction on each of the challenged counts, the superior court did not err by denying his Rule 20 motion.

**B.      The Superior Court's Admission of Testimony Regarding Other-Act Evidence.**

**¶31**      Before trial, the superior court granted the State's motion to allow evidence of prior uncharged acts related to Valentine's earlier relationships with the two 14-year-old girls, *see supra* ¶ 25, pursuant to Arizona Rule of Evidence 404(c).[4] On appeal, Valentine challenges the admission of testimony by only one of the girls. In support of its motion, the State offered an audio recording, a transcript of a recent interview the

---

[4]      The State also sought to admit evidence of Valentine's prior sexual acts with a 12-year old girl. The court ultimately did not admit that evidence.

girl had with police, and testimony of a police detective. The court initially set an evidentiary hearing to consider the State's request, but, based on its review of the audio recording, it ultimately determined it was not necessary to hear live testimony by the girl. The court found the evidence regarding Valentine's prior relationship with the girl was admissible pursuant to Rule 404(c). Valentine argues the court was required to hear her testify in person before ruling on the State's pretrial motion to allow her to testify at trial.

**¶32** Rule 404(c) "permits the admission of evidence of uncharged acts to establish 'that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged.'" *State v. Garcia,* 200 Ariz. 471, 475, ¶ 26 (App. 2001). Before admitting evidence pursuant to Rule 404(c), the court must find that:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403. In making that determination under Rule 403 the court shall also take into consideration the following factors, among others:
>
> (i) remoteness of the other act;
>
> (ii) similarity or dissimilarity of the other act;
>
> (iii) the strength of the evidence that defendant committed the other act;
>
> (iv) frequency of the other acts;
>
> (v) surrounding circumstances;
>
> (vi) relevant intervening events;
>
> (vii) other similarities or differences;
>
> (viii) other relevant factors.

Ariz. R. Evid. 404(c)(1).   Finally, the court must instruct the jury as to the proper use of such evidence.   Ariz. R. Evid. 404(c)(2); *Garcia,* 200 Ariz. at 475-76, ¶ 27.

**¶33**      The court was not required to observe the girl testify in person before it ruled on the State's Rule 404(c) motion.  *See State v. LeBrun*, 222 Ariz. 183, 187, ¶ 14 (App. 2009) (affirming Rule 404(c) order issued based on audio and video recordings of victims' statements).  *Id.*

**¶34**      The superior court considered the audio recording of the victim's statement about the prior acts.  It also heard live testimony of a detective who had investigated the prior acts, who told the court that the audio-taped account by the victim was consistent with his prior investigation.  The court gave Valentine the opportunity to offer evidence rebutting the victim's account, but Valentine did not do so.

**¶35**      On this record, we find no error in the court's decision to allow the testimony pursuant to Rule 404(c).

### C.   Admissibility of Exhibits 9, 13-15.[5]

**¶36**      Valentine next challenges the superior court's admission of four exhibits, asserting they constitute improper other-act evidence under Rule 404(b), (c).  Exhibit 9 is a number of letters written by Valentine to one of the 14-year-old girls when he was incarcerated in 1992 shortly after he had been living with her.  These letters indicate Valentine's sexual interest in her.  Exhibit 13 is a number of photographs Valentine took of the victims that are less sexually explicit than the images underlying the charged offenses in Counts 10-36.  Exhibit 14 consists of a CD with seven images of young naked girls, and Exhibit 15 includes four photographs of an unidentified young girl spreading her legs while wearing underwear or pajamas.

**¶37**      Contrary to Valentine's suggestion, Exhibits 9 and 13-15 were admissible under Rule 404(c) to establish his sexual affinity for young girls

---

[5]      Valentine incorrectly refers to Exhibit 12 in his brief.  Pretrial exhibit 12 was admitted at trial as Exhibit 9.

and to prove that he acted in conformity with his "aberrant sexual propensity to commit the offense[s] charged." Ariz. R. Evid. 404(c).[6]

## D.      Denial of Motion to Suppress.

¶38      Valentine was not wearing his pants when he was arrested. However, as he was detained outside his home, apparently while it was being secured by officers, Valentine asked for his pants before he was to be taken to jail. A police officer who entered the home with T. and retrieved the pants from Valentine's bedroom found his camera in one of the pants pockets and left it in Valentine's bedroom. *See supra* ¶¶ 29-30. The camera was later seized pursuant to the warrant.

¶39      Valentine moved to suppress the camera, arguing it was improperly seized when it was removed from his pants because T. did not have authority to permit the police officer to enter Valentine's bedroom to retrieve the pants. After an evidentiary hearing, the superior court denied the suppression motion.

¶40      In reviewing the denial of a motion to suppress, we consider only the evidence submitted at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996), and we view those facts in the manner most favorable to upholding the superior court's ruling. *State v. Box*, 205 Ariz. 492, 493, ¶ 2 (App. 2003). Although we defer to the superior court's factual determinations, we review *de novo* its ultimate legal conclusion. *Box*, 205

---

[6]      Because Valentine defended the charges by arguing the images found in his possession were not sexually exploitive and he was not sexually attracted to the victims or other young girls, the exhibits were also admissible to rebut that defense. *See State v. Villalobos*, 225 Ariz. 74, 80, ¶¶ 19-20 (2010) (other-act evidence is admissible to rebut a defense). And despite Valentine's suggestion to the contrary, the fact that the letters in Exhibit 9 were written 14 years before the criminal acts in this case occurred does not render them inadmissible. *See State v. Van Adams*, 194 Ariz. 408, 416, ¶ 24 (1999) ("Although remoteness between the two incidents affects the weight to be given the testimony by the jury, it generally does not determine its admissibility."). Finally, Exhibit 13 was admissible to support H.'s testimony that her photograph sessions with Valentine "started off pretty innocent" before becoming "more risqué" and "very inappropriate." *See State v. Williams*, 183 Ariz. 368, 376 (1995) ("Evidence which tests, sustains, or impeaches the credibility or character of a witness is generally admissible, even if it refers to a defendant's prior bad acts." (citations omitted)).

Ariz. at 495, ¶ 7. A superior court's ruling on a motion to suppress will not be reversed on appeal absent clear and manifest error. *State v. Gulbrandson*, 184 Ariz. 46, 57 (1995).

**¶41** The Fourth Amendment protects people from unreasonable searches and seizures. *Scott v. United States,* 436 U.S. 128, 137 (1978). The exclusionary rule prevents the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman,* 189 Ariz. 505, 508 (App. 1997). Generally, a warrantless search is *per se* unreasonable under the Fourth Amendment. *State v. Branham,* 191 Ariz. 94, 95 (App. 1997). A warrantless search is valid, however, if the search is conducted after voluntary consent is given. *State v. Paredes*, 167 Ariz. 609, 612 (App. 1991). "The voluntariness of a defendant's consent to search is a question of fact determined from the totality of circumstances." *Id*.

**¶42** Valentine contends the police officer who discovered the camera in his pants "lacked the requisite authority to enter [Valentine's] room[.]" The evidence offered at the suppression hearing showed that Valentine requested that someone retrieve his pants, which were located in his bedroom. Thus, Valentine consented to the search of his room. Moreover, the officers testified that, because Valentine was about to be transported to jail, officers would remove any items from the pockets as a safety precaution before giving the pants to Valentine to wear. Under these circumstances, officers had Valentine's consent to "seize" his pants, emptying the pockets was reasonable, and to the extent such action constituted a seizure, it did not amount to a Fourth Amendment violation. Accordingly, the superior court acted within its discretion in denying the motion to suppress.

## E. Motion to Dismiss: Right to a Speedy Trial.

**¶43** Before trial, Valentine unsuccessfully moved to dismiss, arguing a purported violation of his constitutional rights to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right to . . . a speedy public trial . . . .").

**¶44** Valentine argues that the delay of more than five years from his arrest until trial "qualifies as an 'unreasonable amount of time'" that deprived him of the chance to locate "potential alibi witnesses who might have helped him[.]" Further, he asserts the delay was unnecessarily caused

by the State's "numerous indictments since [his] arrest[.]"[7]  Without citing the record, Valentine also claims the delay was caused by the State's failure "to timely comply with his discovery requests."[8]

¶45        Speedy trial claims are evaluated under a four-factor "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Those factors are:  "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*  No one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial" because "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533; *see Doggett v. United States*, 505 U.S. 647, 651 (1992).

¶46        In denying Valentine's speedy trial argument, the superior court found the following:

> I think everyone generally agrees I should apply the *Doggett* factors in terms of the delay.
>
> * * *
>
> The first question is whether the delay was – is uncommonly long.  On one hand, five years is pretty long.  There's no doubt.  We're not talking about a year or two years here, we're talking about five years.
>
> * * *

---

[7]     It appears from the record that the indictment immediately resulting from Valentine's arrest in 2006, and the subsequent indictments as the police investigation continued, were dismissed when the final charges (Counts 33-36) were filed, resulting in CR 2012-006283.  Although the State had the camera containing the images that led to Counts 33-36 in its possession since Valentine's arrest, it was some time before the State discovered the images.  According to the State, it was not until Valentine repeatedly demanded access to the camera for his expert that the State "knew [something incriminating was stored in the camera]."

[8]     Valentine appears to admit, however, that the State did not comply with his discovery requests because it had already disclosed the requested material to Valentine's former counsel.

Looking at that factor with this case, this is obviously a complicated case. We've got multiple victims, we've got forensic issues, we've got multiple experts, we've got a situation where defendant's been represented by multiple attorneys and represented himself.

We've got - I think there was at least one Rule 11 proceeding. Two. Two Rule 11 proceedings. There were - there was a wait that related to how the 404 hearing would proceed, specifically the LeBrun, L-E-B-R-U-N, decision, whether the State could present videotaped testimony. There was basically an agreed upon wait for that.

In other words, this case has had a lot of reasons why it's been delayed. And if I'm looking at all those different reasons and situations to resolve all of those things, I don't see it as uncommonly long.

Yes, if we just say six years or nearly six years, that is uncommonly long. For all these things to happen, it's not really uncommonly long, I don't think.

And that dovetails into the second prong of the *Doggett* analysis, which is: Who's to blame?

Well, from my perspective, really nobody's to blame here. You both have had issues in the case that need to get resolved. For purposes of the motion, I'm looking to see is the State to blame or is there otherwise some shenanigans going on from the State to escape the speedy trial obligations.

Are they refiling so they can buy more time? Are they failing to do things they should do in terms of turning over discovery? I know we have the issue with the camera, we'll talk about that in a minute. But as far as the case management goes, not really. I don't see the State doing anything unusual in this case, or otherwise delaying the case.

I see the case being delayed in large part because of defendant's particular situation with respect to either counsel or representation, Rule 11, or the evidentiary expert issues that are going on in this case.

I note that Mr. Valentine says that he told - well, we'll get to - the third factor is whether Defendant asserted his speedy trial rights.

Mr. Valentine maintains that previous counsel were instructed to assert those rights and they didn't. But they didn't. And I'm left with that. . . .

But right now, without any record of a consistent assertion, and my own experience - I'm not sure how long I've been with this case, probably a couple years now, I think - in my experience of the couple years, the delays are essentially consensual delays trying to get the case ready to go in the right way. And I don't see a delay from the State, or at least anything from my perspective where I can blame the State for delays.

\* \* \*

And finally, the question of prejudice. And there's going to be some inherent prejudice in a case that takes this long to get to trial, there's no doubt. But specific prejudice to this defendant, there was a reference to the loss of employment records that could have been obtained, or they would have been obtained earlier and they could have explained where Mr. Valentine was. But from my perspective they could have gotten those at any point. There was no bar to getting those early in the case.

The fact that memories fade, that's not enough, because it could hurt the State as much as it hurts the defense. We've got multiple alleged victims who were younger. That's going to present a challenge for the State, maybe more so than it would in a case if the alleged victims were adults.

With respect to Counts 33 and 36, . . . if we're talking about prejudice, yeah, suddenly we've got these new counts sitting there. I'm going to focus on should the State have known, or - No. 1, did they know they had some information and fail to disclose or didn't charge it. I don't have anything that tells me that the State knew it and held it.

\* \* \*

Because I don't certainly right now have enough information where I'm going to dismiss those counts. Because I don't see anything or don't have any information that the State just knew that that information was in the camera and made a strategic decision to hold it and then decided to bring it out later, or otherwise there was some sort of real maybe gross negligence in not recognizing that there were potential other charges.

Again, with respect to the other charges, I don't see there's - you're not - you being in the position now not being able to defend those because of all the time that went by.

So for all those reasons, I just don't see dismissal under the *Doggett* factors. Again, I do recognize it's been a long time, but from my perspective dismissal is not appropriate.

¶47        Although we review issues of constitutional law *de novo*, we review the superior court's factual determinations for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 398, ¶ 8 (2013).

¶48        We agree with the superior court that five-and-a-half years awaiting trial is a lengthy period. However, Valentine does not point to anything in the record to show the court erred in making its factual findings regarding the reasons for the pretrial delay. Indeed, Valentine has not provided us with the records from the 2007 cases that apparently form the basis for many of the court's findings. We must presume those records support the court's factual determinations regarding the *Doggett* factors. *See State v. Zuck*, 134 Ariz. 509, 513 (1982) ("Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court."). Accordingly, on this record, we find no abuse of discretion; no reversible error occurred.

**CONCLUSION**

¶49      For the foregoing reasons, we vacate Valentine's convictions and sentences for Counts 33-35. The remaining convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama